(No. 42204.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JAMES THOMAS DOWNEN, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

JOHN P. BURE, of Deerfield, appointed by the court, for appellant.

JACK HOOGASIAN, State's Attorney, of Waukegan, for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from the circuit court of Lake County wherein petitioner, James Thomas Downen, contends that his petition, filed pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1967, ch. 38, pars. 122—1 *et seq.*) was improperly denied.

Petitioner was arrested at approximately 9:00 P.M. on July 30, 1962, and charged by information with the offense of forgery of a $134.22 check, cashed at an A & P grocery store. Shortly before noon on the following day he was brought before the court and, after proper admonishment, pleaded guilty to the offense as charged and was sentenced to the penitentiary for a term of two to fourteen years. He was then 36 years old.

Petitioner filed his *pro se* petition for relief under the Post-Conviction Hearing Act and counsel was appointed to represent him. Thereafter an amended petition was filed in which he claimed, as he claims here, that his constitutional rights were denied him in that (1) he was refused assistance of counsel between the time of his arrest and the time that he was brought before the court; (2) that his plea of guilty was the product of an illegally obtained confession; (3) that he was further induced to plead guilty by the representations of an assistant State's Attorney that he would receive a lesser sentence than that which was in fact imposed; and (4) that he was not allowed sufficient time to deliberate his plea of guilty. The State then filed a motion to dismiss which was denied and, upon filing of an answer, the cause was set for hearing.

Essential to the proper disposition of this case is an examination of the evidence before the court.

At the hearing, petitioner's mother, Mattie Downen, testified that at about 8:30 P.M., July 30, 1962, the taxi cab in which she was riding was stopped and she was placed under arrest. She was informed that she "was being held

in lieu of [her son] * * * James Downen." She was taken to the Waukegan city jail and placed in a cell. At about 10:30 P.M., two police officers, McMahon and Joy, brought James to view her. She related that at that time she was in an "hysterical" condition and that her son was told if he wanted her released he would have to sign a statement admitting his guilt. James was then taken from her presence. Some time later, officers McMahon and Joy returned and escorted her to an office where James was being held. He allegedly told her: "You will be released, I am going to sign the paper." Shortly thereafter, Mrs. Downen was released.

Petitioner related that he was arrested about 9:00 P.M. July 30, 1962, taken to the Waukegan city jail and placed in an interrogation room. He was questioned by officers McMahon and Joy, never advised of his "rights", and was repeatedly asked to sign a statement admitting his guilt. He was kept in the interrogation room for about 3½ to 4 hours during which time a "handwriting analysis" test, lasting about two hours, was administered. He asked to speak with a certain named attorney and, upon being refused, requested to speak with his mother. He was then informed that she was in custody and would be charged with "being an accomplice before and after the fact" unless he confessed to the crime. Petitioner stated that this threat was repeated at least three more times. About 1:30 A.M., petitioner was taken to the women's section of the jail to view his mother and he there told her that she would soon be released because he was "going to sign their statement". He was then taken back to the interrogation room and was asked to sign a statement being prepared by Officer McMahon. His mother was then brought there, he signed the statement, and she was released.

About 10:00 A.M., petitioner stated that he was taken from the jail to the office of assistant State's Attorney Jack Hoogasian where he gave a second statement. Petitioner

testified that during the conversation they discussed what sentence he would receive if he consented to a waiver of counsel and indictment and entered a plea of guilty; that Hoogasian twice left his office on the pretense of discussing the sentence with the judge; and that he agreed to plead guilty only after Hoogasian told him he would receive a sentence of from two to five years.

Jack Hoogasian testified that he could not recall whether he had been apprised of petitioner's first statement prior to his conversation with him and that at no time did he have or purport to have a conversation with the trial judge regarding petitioner's sentence. He further stated that he recommended to the trial judge "not less than a minimum or more than a maximum so that our parole board would be able to control him accordingly because of his past background." Petitioner was released on May 22, 1962, from the Huntsville, Texas, penitentiary after serving a sentence for the crime of forgery.

Officer McMahon testified that on July 30, 1962, he arrested the petitioner and was also present when Mattie Downen was arrested. He stated that she had been under surveillance that day; that she was observed exiting a tavern whereupon she hid in some bushes and "talked to a white male who was never identified." The police followed her and, when she was within a short distance from her home, they stopped the taxi cab in which she was riding and placed her under arrest for "obstructing a police officer in the arrest of a felon." He further related that petitioner was interrogated by officers Joy, Ritter and Fletcher, and that he did not know who advised Downen of his rights but that such advisement was "a standard department procedure * * * follow[ed] every day." He was uncertain as to what actually transpired in the interrogation room although he was aware of a statement given by petitioner to the examining officers. He spent the remainder of the evening after petitioner's arrest at the night desk. He also stated that

to his knowledge Mattie Downen was never prosecuted and that the charges against her were "dropped."

On the basis of the foregoing testimony and the trial transcript (the trial court thoroughly advised defendant of his rights and admonished him as to the consequences of a plea of guilty), the hearing judge denied the petition, finding much of the evidence in behalf of petitioner unbelievable. This appeal followed.

This court has held that the credibility of the testimony in post-conviction proceedings, as in other cases tried by the court without a jury, is a matter for the trial judge to determine and unless something appears showing that the determination was manifestly erroneous, the trial judge, who had an opportunity to see and hear each witness, should be upheld. *People* v. *Caise,* 38 Ill.2d 486, 489; *People* v. *Alden,* 15 Ill.2d 498, 503.

It is abundantly clear to us that much of Mattie Downen's testimony was both contradictory and equivocal. She initially related that the first time she saw her son that day was at the Waukegan city jail. On cross-examination she stated she first saw him as she exited from the tavern. It was further adduced on cross-examination that after leaving the tavern she hid in some bushes where she met the petitioner. She explained this encounter by saying "[e]vidently * * * he was following me." And, her general reluctance to answer questions posed by the State is evidenced by the following statement of the hearing judge: "Let the record show that the prosecutor and the witness are both staring at each other for about twenty seconds. Now, do you have an answer?" Further, the trial transcript of petitioner's plea of guilty belies the fact that any coercion was present or that there was an agreement as to the sentence to be imposed. On no less than six occasions petitioner was asked if he "intend[ed] to have the benefit of counsel." Each time he replied in the negative. The court next questioned him as to whether he had been induced in any man-

ner, threatened or coerced into pleading guilty. He replied, "Definitely not." Before accepting petitioner's guilty plea the court again questioned him:

"THE COURT: Do you further realize that this court may sentence you to the penitentiary for a period of time of one to fourteen years—

JAMES THOMAS DOWNEN: Yes, I do, but I hope not.

THE COURT: I say, do you realize that the court may?

J.T.D.: Yes.

THE COURT: Have there been any promises made to you to induce you to enter a plea of guilty to the charge, or have there been any threats or coercion against you to force you to enter a plea of guilty.

J.T.D.: Not at all.

THE COURT: If this court were to sentence you to the maximum, would you still enter a plea of guilty here now?

J.T.D.: I would have to, but I sure would hate to see that happen.

THE COURT: Well this court is trying to determine as to whether there is any other influence except your voluntariness in entering this plea.

J.T.D.: No, there is none."

It is apparent that petitioner was properly admonished and further, because of his prior conviction of forgery, he was familiar with police procedures. Therefore, in view of the record in this case, we are not disposed to overturn the decision of the trial judge.

The judgment of the circuit court of Lake County is affirmed.

*Judgment affirmed.*