THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES HOUCHINS, Defendant-Appellant.

(No. 11735;

Fourth District—May 24, 1972.

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and William E. Lowry, State's Attorney, of Pittsfield, (Thomas J. Immel and Fred G. Leach, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On August 7, 1968, defendant, without counsel, entered pleas of guilty to forgery, two counts of theft under $150 and unlawful use of weapons. The trial court imposed a sentence of 5 to 8 years in the penitentiary on the forgery charge, and sentences of one year each on the other three charges, the sentences to run concurrently. In December, 1969, defendant filed, *pro se*, a petition seeking post-conviction relief. Counsel was appointed and leave granted to defendant to file an Amended Petition. The original petition dealt only with the forgery

conviction as did the Amended Petition. Defendant appeals from the judgment of the court which denied the relief sought in the Amended Post-Conviction Petition.

At the commencement of the hearing on the Post-Conviction Petition on April 2, 1970, defendant announced to the Court that he was dissatisfied with his appointed counsel; that he desired to appear *pro se*, stating "My reason for wanting to appear *pro se* is that it's my contention that (he) has not done an adequate job in acting as my lawyer. This is the reason for me wanting to appear in my own behalf." The Court then allowed defendant's motion to proceed *pro se* but requested appointed counsel to remain at the counsel table and afford defendant any assistance that he might desire. Defendant indicated that this ruling was satisfactory to him. Defendant then asked leave to amend Paragraphs 5 and 6 of the Amended Petition to eliminate what he believed to be an implication that he had been represented by counsel when his plea was taken. The court amended the petition accordingly. The court then explained the function of an opening statement and asked defendant if he cared to make one and defendant then stated to the Court that he intended to prove that " * * * I may well have been incompetent at the time this alleged forgery occurred and also during my trial, arrest and interrogation." The Court then explained some of the rules of evidence to the defendant and told him to proceed.

Defendant called his wife as his first witness. She testified that she visited the defendant at the jail on the evening of August 6, 1968, the day of his arrest, and was in the courtroom on the following day when his plea was entered. That on the morning of the 7th, before going to Court, she and defendant were married by Judge Anderson. Throughout this proceeding defendant referred to the proceedings during which he entered his plea of guilty as "the trial". In response to defendant's question she stated he did not act, on the day of the trial, as he usually did. That defendant was usually " * * * very enthusiastic, and bubbly and joyful and that day * * * passive * * * remote." She testified that defendant had a drinking problem, that when sober he was cheerful. On cross-examination she was asked if she felt defendant was under the influence of liquor on the 7th when he entered his plea, and responded, "I didn't know what was wrong with him on the seventh. He just wasn't himself." She was then asked if she thought defendant was competent at the time of the marriage ceremony on the morning of the seventh, whereupon defendant, not the attorney, stated the following objection:

"I object to this line of questioning, I don't think that anyone in the

courtroom can attest to anyone's competency. I believe the law says that this requires two psychiatrists and a panel of jurors."

The Court overruled the objection and the witness answered, "He was like any other bridegroom, I suppose, kinda dazed".

Defendant also called Sheriff James Wade as a witness who testified: I arrested defendant August 6, 1968, for carrying a concealed weapon and burglary. That the defendant did not appear to be nervous or sick and did not recall defendant asking for a doctor.

Defendant took stand in his own behalf. He testified that he was arrested on August 6, 1968, and taken to the county jail. That he had been drinking for two or three weeks. He was brought to Court on the 7th. He stated that because he had stopped drinking, he "was sicker, not to the point where I required hospitalization or anything like that but I was sick. I had a terriffic headache." He testified that he did not remember waiving his rights. At this juncture it came to the Court's attention that, pursuant to a request from defendant, he had, on May 7, 1969, ordered prepared and forwarded to defendant a complete transcript, of the August 7, 1968, proceedings. The transcript had been prepared, but defendant claimed that it had not been forwarded to him. The Court, on learning of this circumstance, promptly deliverd a copy of transcript to defendant and ordered a recess, stating:

"I'm going to recess this hearing for as long as it takes Mr. Houchin to take the transcript of the proceedings and examine them here so that he has been given the complete opportunity to testify in any way that he wishes. The proceedings here, because of the defendant's request to proceed *pro se*, make it extremely difficult for all, I'm sure. There's been no request here to show that a copy of the order or a copy of the transcript was not, pardon me, was in fact provided to the petitioner so I would like to at least before we preclude you, Mr. Houchin, from testifying, you know, because once you've walked off, and started your summation, that's the end of the case. I'd like to give you the opportunity to read the transcript over, discuss it with Mr. Schimmel, who has been so kind as to be availabe to you here, and then determine whether there is anything further you want to introduce in regard to evidence.

MR. HOUCHIN: I appreciate that very much, Your Honor."

After the recess the defendant stated that he did not desire to testify further but stated that the transcript had proven extremely helpful to him and that he desired to read from the transcript in his closing argument.

On cross-examination defendant, when asked if he was intoxicated

at the time of entering his plea of guilty responded, "I may well have been, I don't know." He stated that he recalled the marriage ceremony performed the morning of August 7th, and when asked whether he knew what he was doing at the time stated, "I honestly don't know."

Defendant first urges that he cannot be said to have voluntarily waived counsel at the time of his plea of guilty to the forgery charge, claiming that he was suffering from the symptoms of withdrawal from "a prolonged drinking bout with alcoholism" and had the "shakes" at the time of the waiver.

■■ Examination of the record of the taking of defendant's plea, reveals that he executed a written acknowledgment that the plea was voluntary, and also executed a waiver of trial before the jury, he also executed a written waiver of indictment. It also demonstrates a long, detailed and exceedingly thorough admonishment by the trial judge of the nature of the charge, the penalties involved, and a complete admonishment as to each of the basic constitutional rights to which defendant was then entitled. There is no contention about the adequacy of the admonishment. The waiver of indictment and the taking of the plea was done during the same hearing, and the record establishes eleven separate instances on which the Court advised defendant of his right to counsel. It also establishes three separate occasions on which defendant stated he desired to waive counsel, and four separate instances where the defendant acknowledged that he understood that he had a right to counsel. The record also reveals numerous instances where the defendant, in response to inquiry by the judge, stated that he understood what was being said to him. It was only after the admonishments were completed that the Court accepted the plea. There is nothing in the record to suggest confusion or lack of understanding on the part of the defendant.

■■ Defendant also contends that there is a discrepancy between the testimony of Sheriff Wade given at the time of the hearing in aggravation and mitigation and that given during the hearing on the post-conviction petition. We have examined the record and find no inconsistency. The argument in this connection is basically an exercise in semantics, but assuming that some discrepancies did exist, Wade was not the only witness who testified. The credibility of the testimony in post-conviction proceedings, as in any case tried without a jury, is for the trial judge to determine, and unless it appears that the determination is manifestly erroneous, the trial judge who had an opportunity to see and hear the witnesses will be upheld. *People v. Downen*, 45 Ill.2d 197, 201, 258 N.E.2d 337; *People v. Caise*, 38 Ill.2d 486, 231 N.E.2d 596; *People v. Alden*, 15 Ill.2d 498, 155 N.E.2d 617.

Lastly, defendant urges that counsel was incompetent because he did not secure the transcript of the proceedings wherein the guilty plea was taken, prior to the post-conviction hearing. Counsel had been appointed some months after the trial court had, on May 7, 1969, ordered the transcript prepared and forwarded to defendant at defendant's request. There seemed some doubt in the mind of the trial judge that defendant had not, in fact, received the transcript. In any event, defendant does not suggest how he was prejudiced. Additionally, as above indicated, when a copy of the transcript was made available to him the Court promptly recessed until he had had time to read it and indicated he was ready to proceed; and the only use made of the transcript was the reading of portions to the Court during argument. It is the contents of that transcript, indeed, which completely belies defendant's contentions here.

■■ Appointed counsel had conferred with defendant, had prepared and filed an Amended Post-Conviction Petition, rendered such assistance as defendant permitted during the hearing. The charge of incompetency is totally devoid of substance or merit.

■■■ A post-conviction proceeding is civil in nature and the burden of proof is on the petitioner who must establish the deprivation of a substantial constitutional right before he is entitled to relief. (*People v. Harper*, 43 Ill.2d 368, 253 N.E.2d 451; *People v. Somerville*, 42 Ill.2d 1, 245 N.E.2d 461.) The defendant has not met this burden of proof. On the contrary this record conclusively establishes a careful, thorough and patient trial judge who was at pains at every stage of these proceedings to secure to defendant the constitutional guarantees to which he was entitled. It also establishes, beyond question, that defendant knowingly, intelligently and of his own volition, waived counsel and entered his plea of guilty with full comprehension of the consequences.

Judgment affirmed.

CRAVEN, P. J., and SMITH, J., concur.