(No. 40813.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ROBERT SOMERVILLE *et al.,* Appellants.

*Opinion filed January 29, 1969.*

··· BELLOWS, BELLOWS & MAGIDSON, of Chicago, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED J. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. HADDAD, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Defendants Robert Somerville, Gail Somerville and Paul Langusch were convicted of armed robbery of Zayre's Department Store in Oak Lawn in a jury trial in the circuit court of Cook County, and sentenced to the Illinois State Penitentiary for a term of not less than ten nor more than twenty years. Their convictions were affirmed by the appellate court (71 Ill. App. 2d 381), and their petitions for rehearing and leave to appeal to this court were denied.

Defendants then instituted proceedings under the Post-Conviction Act (Ill. Rev. Stat. 1965, ch. 38, par. 122—1 et seq.), alleging that they were denied the effective assistance of counsel as guaranteed by the sixth and fourteenth amendments of the United States constitution and the due process clause of the Illinois constitution because of counsel's incompetency and his representation of all defendants; that petitioner Gail Somerville was denied constitutional rights against unreasonable search and seizure; and that perjured testimony was knowingly used by the State in violation of the constitutional requirements of due process.

The circuit court granted, in part, the State's motion to dismiss defendants' post-conviction petition, but ordered a hearing on the allegations respecting the use of perjured testimony by the State. After such hearing the court denied defendants' petition, and they have appealed to this court.

We shall not delineate the facts relating to the crime itself, since defendants at no time contended that their conviction was not supported by the evidence. Moreover, this post-conviction proceeding is not intended to relitigate

defendants' guilt or innocence, but rather to determine whether they were denied constitutional rights. *People* v. *Collins,* 39 Ill.2d 286, 288; *People* v. *Ashley,* 34 Ill.2d 402.

Defendants contend they were denied effective assistance of counsel at the trial in violation of the sixth and fourteenth amendments. The four Somerville brothers were tried for the robbery in question in three different trials in which they were represented by different attorneys. Defendants Robert and Gail Somerville and Paul Langusch were tried together here, and were represented in the trial court by a single attorney of their choice, M. Donald Ross, who was privately retained by them. The incompetency of trial counsel or his conflicting interests created by joint representation were not raised by defendants at the trial, or on appeal in any of the eight briefs filed on behalf of defendants Somerville, who were then represented by attorney Julius L. Echeles, or in the brief of attorney Alan Berg, filed for defendant Langusch.

Under these circumstances, where all of counsel's alleged trial errors and other facts relating to the issue of incompetency of his representation appear on the face of the record, that issue could properly be deemed *res judicata.* The concept of *res judicata* includes all issues actually raised and those that could have been presented but were not. (*People* v. *Kamsler,* 40 Ill.2d 532, 533; *People* v. *Collins,* 39 Ill.2d 286, 289.) In *Collins* we stated at p. 289: "The petitioner did not raise the issue of competency of his trial counsel in that appeal, thereby waiving it, and he cannot now use the Post-Conviction Hearing Act as a device to obtain another hearing under such constitutional claims."

Assuming, however, that the strict application of the doctrine of *res judicata* is relaxed, as this court has done "where fundamental fairness so requires" (*People* v. *Hamby,* 39 Ill.2d 290, 291), it is incumbent upon this court to determine whether defendants were denied effective assistance of counsel as guaranteed under the sixth and

fourteenth amendments of the Federal constitution. *Anders* v. *California,* 386 U.S. 738, 744, 18 L. Ed. 2d 493, 498, 87 S. Ct. 1396; *Gideon* v. *Wainright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.

Where defendant retains his own counsel, however, as in this case, there is substantial case law holding that the alleged incompetency of counsel presents no constitutional question for consideration in a post-conviction proceeding. *People* v. *Clements,* 38 Ill.2d 213, 215; *People* v. *Farmer,* 34 Ill.2d 218, 219; *Davies* v. *People,* 10 Ill.2d 11, 15; *People* v. *Morris,* 3 Ill.2d 437, 445.

The justification of this rule is explained in the *Morris* case at p. 445: "Any other rule would put a premium upon pretended incompetency of counsel; for, if the rule were otherwise, a lawyer with a desperate case would have only to neglect it in order to ensure reversal or vacation of the conviction."

Under the expanding concept of due process of law in many areas of criminal procedure (*People* v. *Morris,* 3 Ill.2d at 448), where representation by counsel of defendant's choice is of such low calibre as to amount to no representation at all, or reduces the court proceedings to a farce or a sham, defendant is denied the fair trial contemplated by the due process guarantees of the Federal and State constitutions. *People* v. *Washington,* 41 Ill.2d 16, 22; *People* v. *Green,* 36 Ill.2d 349, 351; *People* v. *De Simone,* 9 Ill.2d 522, 531; *People* v. *Reeves,* 412 Ill. 555, 562-563.

Incompetency of that magnitude is not established, however, where retained counsel fails to object to inadmissible evidence (*People* v. *Underhill,* 38 Ill.2d 245, 254), or fails to move to suppress certain evidence and makes other errors of judgment or trial strategy. (*People* v. *Washington,* 41 Ill.2d 16, 21; *People* v. *Green,* 36 Ill.2d 349, 351; *People* v. *Palmer,* 27 Ill.2d 311, 314; *People* v. *Hall,* 413 Ill. 615.) Incompetency tantamount to "no representation" has been found from the totality of counsel's conduct at the trial.

(*People* v. *De Simone,* 9 Ill.2d 522, 531.) In the *De Simone* case, counsel not merely made the defense of insanity in an unorthodox way, but showed lack of knowledge of basic criminal procedures and rules of evidence, resulting in almost a complete failure to develop a defense; failed to acquaint himself with the testimony of witnesses, and presented what was labelled as "a picture of utter futility" to the court and jury.

The record here presents quite a different picture of defendants' trial counsel. Counsel demonstrated skill in cross-examining witnesses, particularly the State's witness Arnold, reflecting thorough investigation of his background and emphasizing all discrepancies between his testimony and his prior signed statement. Counsel also manifested knowledge of the law in his instructions, and in his motion to dismiss the indictments, predicated on a very recent statute.

Defendants complain, however, that counsel failed to protect certain constitutional rights which were not intentionally relinquished. Among these rights were those delineated by the United States Supreme Court in *Bruton* v. *United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, which defendants claim were violated when counsel failed to object to the witness Arnold's statement, implicating defendants Somerville, and allegedly assented to by co-defendant Langusch.

Although *Bruton* was decided after the appellate court decision here, the *Bruton* rule has been held retroactive. (*Roberts* v. *Russell,* 392 U.S. 293, 294, 20 L. Ed. 2d 1100, 88 S. Ct. 1921.) We must, therefore, determine whether the constitutional rights protected there were involved and improperly waived by defendants' trial counsel.

In *Bruton* the co-defendant Evans did not testify, but his out-of-court confession inculpating Bruton was introduced in evidence. The United States Supreme Court, in overruling the *Delli Paoli* case (389 U.S. 818, 1 L. Ed. 2d

278, 77 S. Ct. 294), held that because of the substantial risk that the jury, despite instructions to the contrary, would look to the incriminating extra-judicial statements in determining defendant Bruton's guilt, admission of Evans's confession violated Bruton's right of cross-examination secured by the confrontation clause of the sixth amendment. The court stated at p. ·126: "Plainly the introduction of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, *since Evans did not take the stand*. Petitioner thus was denied his constitutional right of confrontation." (Ital. added.) It is evident from that statement, reflecting the basis of the *Bruton* decision, that the facts in *Bruton* are distinguishable, and the constitutional rights protected there are in no way involved in this case.

Unlike the *Bruton* case, co-defendant Langusch did take the stand and he at no time "confessed". In fact, his alleged assent to the statement given by the witness Arnold, implicating defendants Somerville, was specifically denied by Langusch when he testified at the trial. This is all expressly noted in the appellate court opinion in this case (71 Ill. App. 381, 387): "Paul Langusch testified in his own behalf and denied any participation in the robbery. * * * Langusch said Arnold read his statement to him * * * and that at its conclusion he denied any complicity in the robbery."

Thus, defendants Somerville were not subjected to the risk of extra-judicial inculpating statements of a co-defendant, or deprived of any right of confrontation or cross-examination, as involved in *Bruton*. We cannot perceive, therefore, how counsel's failure to object to the Arnold statement, on grounds that it deprived defendants of rights delineated in *Bruton,* constituted incompetency. "Can it be that a lawyer who fails to make frivolous objections to admissible evidence is thereby denying his client the constitu-

tional right to the assistance of counsel?" Frankfurter, dissent, *Glasser* v. *United States,* 315 U.S. 60, 93, 86 L. Ed. 680, 711 62 S. Ct. 457.

Nor can counsel's failure to object to Arnold's written statement being taken to the jury room be deemed "incompetency." The statement itself added nothing to Arnold's testimony, and allowing it to be closely considered by the jury was part of counsel's strategy to emphasize discrepancies between Arnold's testimony and his former statement to discredit him and justify defendants' acquittal. Such a tactical judgment cannot be equated with the concept of "no representation," nor convert the trial into a sham or farce in violation of due process.

Defendants further contend that they were deprived of effective assistance of counsel because a single lawyer represented all three of them, and he was not able to give each defendant an undivided, effective defense, citing *Glasser* v. *United States,* 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, and the cases which have embellished its *ratio decidendi.*

In *Glasser* the United States Supreme Court held that a defendant in a conspiracy case was deprived of assistance of counsel, in violation of the sixth amendment, where, over his objection, the court appointed his counsel to also represent a co-defendant, with notice that the interests of the defendants may be inconsistent, and where counsel's defense of defendant was rendered less effective.

All of those factors were emphasized by the court: "* * * so we are clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. * * * Glasser [defendant] never affirmatively waived the objection which he initially advanced when the trial court suggested the appointment of Stewart. * * * The possibility of the inconsistent interests of Glasser and Kretske was brought home to the court,

but instead of jealously guarding Glasser's rights, the court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights. For the manner in which the parties accepted the appointment indicates that they were acceding to the wishes of the court. Our examination of the record leads to the conclusion that Stewart's representation of Glasser was not as effective as it might have been if the appointment had not been made. We hold that the court thereby denied Glasser his right to have the effective assistance of counsel, guaranteed by the Sixth Amendment." 315 U.S. at 70, 71, 76, 86 L. Ed. at 699, 700, 702.

The mere recital of the facts and rationale in *Glasser* indicates its inapplicability as a precedent here. It is undisputed that, unlike *Glasser*, all three defendants selected the particular trial counsel to represent them; joint representation was not foisted upon them over any objections. In fact, that issue wasn't even mentioned at the trial, nor on appeal when defendants were represented by another lawyer of their choice.

Moreover, the record is devoid of any evidence that defendants were prejudiced by having one lawyer represent them, as found in *Glasser;* they all pleaded not guilty, and co-defendant Langusch's testimony and his defense in no way conflicted with the defense of the Somerville brothers.

Defendants' contention that joint representation deprived them of effective assistance of counsel is in no way supported by the Court of Appeals cases invoking the *Glasser* rule, since they construe it to require a showing of actual conflict of interest between co-defendants and "prejudice against the party claiming Sixth Amendment rights." *Lollar* v. *United States* (D.C. cir.), 376 F.2d 243, 246; *United States* v. *Burkeen* (6th cir.), 355 F.2d 241, 243, 244; *Campbell* v. *United States* (D.C. cir.), 352 F.2d 359, 361; *Lugo* v. *United States* (9th cir.), 350 F.2d 858, 859;

*United States* v. *Dardi* (2d cir.), 330 F.2d 316, 335, *cert.* den. 379 U.S. 845.

Although the decisions of the District of Columbia Court of Appeals engrafted onto the *Glasser* rule the requirement that the trial judge ascertain that co-defendants' decision to proceed with one attorney is an informed decision, those cases do not support defendants' position, since they also required that "some prejudice, some conflict of interest resulting from joint representation must exist before one can be said to have been denied effective assistance of counsel." (*Lollar* v. *United States,* 376 F.2d at 246.) Thus, in *Campbell,* where co-defendants had a single counsel and were not informed of possible disadvantages of joint representation, the court reversed only the conviction of the defendant actually prejudiced by sharing an attorney, and affirmed the conviction of the co-defendant where the court was "unable to perceive anything indicating that his defense suffered from sharing an attorney." (*Campbell* v. *United States,* 352 F.2d at 361.) In the record before us none of the defendants suffered from sharing counsel.

Nor is *People* v. *Ware,* 39 Ill.2d 66, 68, cited by defendants, determinative. The post-conviction petition was held improperly denied where the same appointed counsel represented both the defendant who pleaded not guilty, and his co-defendant who pleaded guilty, and prior to sentencing testified for the prosecution at defendant's trial. There the positions of the co-defendants were antagonistic, whereas defendants here all pleaded not guilty, and, their defenses were in no way contradictory.

In rejecting defendants' contention that joint representation deprived them of constitutional rights, we find appropriate the statement in *Lugo* v. *United States,* 350 F.2d at 859: "All the cases cited to us by appellant involved obvious conflicts of interest, and while we cannot indulge in nice calculations about the amount of prejudice which re-

sults from a conflict of interest (*Glasser*, supra), neither can we create a conflict of interest out of mere conjecture as to what might have been shown."

Defendants' further contention that their counsel deprived them of the constitutional right to a trial free from prejudicial publicity, by referring to certain newspaper articles in his opening remarks, is without merit. Counsel's remarks were undoubtedly part of his strategy to convince the jury that the case was being prosecuted because of public pressure and in a hostile climate created by the news media. Such tactics, possibly patterned after the celebrated *Sheppard* case (384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507), cannot be deemed incompetency tantamount to a denial of the right to counsel, particularly where the court intervened to prevent any possible prejudice to defendants. It is significant that despite defendants' multifarious criticism of their trial counsel, it is nowhere claimed that the "outcome of their trial would probably have been different" if they had other counsel. *People* v. *Palmer*, 31 Ill.2d 58, 65.

Defendants also argue that they were denied due process of law because the State knowingly permitted the use of perjured testimony. A post-conviction hearing was held on this issue to determine whether the witness Arnold perjured himself when he testified at defendants' trial that no promises were made to him that he would not be prosecuted for his crime. Although defendants had the burden of showing by clear and convincing evidence that Arnold lied, and that such perjured testimony was wilfully given, and was so material to the issues as to have probably controlled the result (*People* v. *Ostrand*, 35 Ill.2d 520, 532; *People* v. *Alden*, 15 Ill.2d 498, 502), defendants called no witnesses, but offered only statements made by Arnold in subsequent trials for the same robbery.

In the March, 1966, trial of Donald Somerville and Marjorie Kullerstrand, Arnold said that he was told he

probably could get leniency; however, he admitted that his hopes were not based on anything the assistant State's Attorney had indicated.

> "Q. He told you you would get leniency, is that right, and you expected leniency, is that right?
>
> A. No, I don't expect leniency, I hope for it."

In the November, 1965, trial of Edward Somerville, Arnold stated that no promises were made to him; that so far as he knew his fate was up to the judge; and that he expected leniency, but did not know how much he would be able to get. On redirect examination at defendants' trial, Arnold also said that no promises were made, but he expected leniency. The foregoing statements of Arnold at the various trials are not necessarily inconsistent. Moreover, conceivable inconsistencies in testimony of witnesses at former trials "fall short of establishing a knowing use of perjury." *People* v. *Tyner,* 40 Ill.2d 1, 3.

It is claimed further that defendant Gail Somerville was denied his right to be free from unreasonable search and seizure under the fourth and fourteenth amendments, by the search of his car at the time of his arrest and the seizure of a walkie-talkie radio. Since no motion to suppress was made, nor was the issue raised in any way at the trial or in any of the appeals, we must agree with the State that such claim is untimely made in this post-conviction proceeding. *People* v. *Harris,* 33 Ill.2d 389, 390; *People* v. *Brengettsy,* 25 Ill.2d 228, 232.

Under our view of the numerous legal issues presented in this cause the judgment of the circuit court dismissing defendants' petition for post-conviction relief was in accordance with law and is affirmed.

*Judgment affirmed.*