UNITED STATES of America ex rel.
James ALLUM, Petitioner-
Appellant,

v.

John J. TWOMEY, Warden,
Respondent-Appellee.

No. 72–1327.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1973.

Decided Aug. 20, 1973.

James R. Streicker, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., James B. Zagel, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

The questions raised by this appeal are whether petitioner waived his constitutional objection to the admissibility of certain evidence as a matter of Illinois procedure, and if so, whether that waiver also forecloses a federal collateral attack on his conviction.

In October, 1965, petitioner was convicted of the murder of his common-law wife. The evidence of guilt is summarized in the opinion of the Appellate Court of Illinois affirming the conviction. People v. Allum, 78 Ill.App.2d 462, 223 N.E.2d 187 (1st Dist. 1967). At his trial, and also on appeal, petitioner was represented by retained counsel. The competence of his counsel is evident from our examination of the trial transcript and is not challenged by petitioner.

Robert J. Welsh, one of the police officers who took defendant into custody immediately after the incident, testified on behalf of the prosecution. Although officer Welsh's testimony is not mentioned in the Appellate Court's summary of the evidence of guilt, it provides the basis for petitioner's collateral attack on his conviction because officer Welsh described an oral statement which petitioner made after he was taken into custody.

Petitioner's oral statement, as described in Welsh's testimony, contained no incriminating admission, but in one respect was inconsistent with the testimony which petitioner later gave in his own defense.[1] In other respects, however, the in-custody statement tended to support petitioner's defense.[2] At no point during the testimony about peti-

---

[1] The inconsistency is somewhat bizarre. Officer Casey had testified that he arrived at the decedent's apartment in response to a call, looked through the bedroom window while standing on a ladder after attempting in vain to obtain entry into the apartment, and observed the defendant engaged in an act of sexual intercourse with the victim. Petitioner's in-custody statement to officer Welsh was consistent with this testimony. However, at trial petitioner testified that he was merely shaking the decedent for the purpose of awakening her when the officer saw him through the window. Tr. 164, 186–187, 194, 199.

[2] For example, on direct examination officer Welsh testified that the petitioner had stated that he had been having trouble with a peeping Tom in the neighborhood. Tr. 119. On cross-examination officer Welsh quoted petitioner as denying that he had had a fight with the decedent or had struck her; the officer further quoted him as saying: "He wouldn't hurt her, she is a lovely person; that he would never hurt her" (Tr. 126), and that he had lived with her for approximately seven or eight years. The examination about the in-custody statement further tended to establish a contradiction between officer Welsh's trial testimony and testimony he gave at the coroner's inquest with respect to the extent of petitioner's intoxication.

tioner's in-custody statement did petitioner's counsel make any objection. On the contrary, he cross-examined the officer to bring out certain facts helpful to the defense.

On November 19, 1971, petitioner initiated his first collateral attack on the conviction by filing a petition for writ of habeas corpus in the court below. He alleged that officer Welsh's testimony about his in-custody statement was improperly received under the rule of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.[3]

The district court, after appointing counsel, dismissed an amended petition for failure to exhaust state remedies. On appeal petitioner argues that there is no available state remedy and therefore the exhaustion requirement is inapplicable.[4] Appellee responds, alternatively, (1) it is not entirely clear that no state remedy exists and the only way to find out is for petitioner to give the Illinois courts an opportunity to consider

his claim, or (2) if no Illinois remedy exists, it is because petitioner has deliberately by-passed an adequate remedy and therefore federal relief is also barred. Petitioner's rejoinder to the second response is that he did not knowingly waive any constitutional right and should not be foreclosed by his counsel's oversight. See Fay v. Noia, 372 U.S. 391, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837.

I.

■■■ We agree with petitioner's analysis of the Illinois post-conviction procedures. It is perfectly clear that neither the statutory writ of error *coram nobis*,[5] nor state habeas corpus[6] is available. The remedy which is arguably available is relief under the Illinois Post-Conviction Hearing Act, Ill.Rev. Stat. Ch. 38, § 122–1 et seq. However, in construing that statute the Illinois Supreme Court has held that if an error which could have been raised on appeal

---

3. In the district court petitioner relied on the following excerpt from *Escobedo*:

 "We hold, therefore, that where, as here, [sus]pect has been taken into police custody, the the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the sus[pect,] police carry out a process of interrogations that lends itself to elicting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the State by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335] at 342, 83 S.Ct. [792] at 795, 9 L.Ed.2d 799 at 804, 93 A.L.R.2d 733, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." 378 U.S. at 490–491, 84 S.Ct. 1765.

 It is arguable that petitioner's allegations were insufficient because the statement was not incriminating, but for purposes of decision we assume that a timely objection would have been sustained. In explanation of the failure to raise the point previously, petitioner al-

leged that "the man representing me gave very poor concern for my rights." R.2, page 7.

4. 28 U.S.C. § 2254(b) provides "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, *or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.*" (Emphasis added.)

5. Ill.Rev.Stat. Ch. 110, § 72. This remedy is limited to relief based on critical facts not of record and not known to the trial judge which, had they been known, would have prevented conviction. Burns v. People, 9 Ill. 2d 477, 138 N.E.2d 525 (1956). Moreover, the two-year statute of limitations, see § 72(3), would bar a 1973 claim based on a 1965 conviction.

6. The Illinois habeas corpus remedy is available if the trial court had no jurisdiction or if an event subsequent to the conviction entitles the defendant to his discharge. See Ill. Rev.Stat. Ch. 65, § 22; People ex rel. Haven v. Macieiski, 38 Ill.2d 396, 398, 231 N.E. 2d 433 (1968); People ex rel. Skinner v. Randolph, 35 Ill.2d 589, 590, 221 N.E.2d 279 (1966).

is not raised, it is deemed waived for post-conviction purposes. There are exceptions to the waiver rule if the defendant was deprived of his right to appeal, or his appellate counsel was incompetent, or if "fundamental fairness" would be offended by enforcing a waiver. See People v. Frank, 48 Ill.2d 500, 272 N.E.2d 25, 27 (1971). Petitioner's analysis of the Illinois cases indicates that none of the exceptions to the waiver rule is applicable here.[7]

■ Respondent argues that the "fundamental fairness" exception is sufficiently imprecise to make it inappropriate for a federal court to assume jurisdiction without first giving the Illinois courts an opportunity to construe their own waiver rule. We reject this argument for two reasons. First, we agree with petitioner that this exception has only been applied in fairly clear-cut situations, none of which fits this case. Second, even if a broader and more subjective test of fundamental fairness is applicable, our own appraisal of the record leads us rather confidently to the conclusion that there is nothing fundamentally unfair in the application of the waiver rule to the issue petitioner seeks to raise.

This is quite clearly a case in which the exhaustion defense, if upheld, would merely burden the state judiciary and the petitioner with a series of futile proceedings which would eventuate in the refiling of a federal petition like the one now before us. Since we would then be faced with respondent's second argument —that the federal claim was waived by the failure to object to the admissibility of the statement at trial—the interests of justice will be served by deciding that issue now.

II.

The explanation for the unavailability of any state remedy is the failure by petitioner's counsel to object to the admissibility of the evidence he now challenges. In these circumstances, respondent argues, the omission should be treated as a "deliberate by-pass" which bars a federal collateral attack as well as state post-conviction relief.

■ If an alleged error was not even called to the attention of the state trial judge, it is normally inappropriate for a federal court to review the issue unless, of course, extraordinary circumstances, such as a subsequent change in the law, are asserted. Usually, therefore, a waiver of a valid constitutional claim in the trial court should foreclose that claim as a basis for post-conviction collateral relief.

■ The Illinois procedures as a whole are tantamount to a rule providing that if an objection, even on constitutional grounds, to the admissibility of evidence is not made at or before trial, the objection should be deemed to have

---

7. "Among the small number of reported cases where 'fundamental fairness' necessitated the relaxation of the waiver rule are: People v. Hamby, 32 Ill.2d 291, 205 N.E.2d 456 (1965) where the issues raised in the post-conviction petition were the same issues which the petitioner had repeatedly requested his attorney to raise on direct appeal; his attorney had refused such requests; and petitioner had been denied leave to present these issues pro se on appeal; People v. Raymond, 42 Ill.2d 564, 248 N.E.2d 663 (1969), where the petitioner alleged in his post-conviction petition that the state had knowingly suppressed evidence at trial favorable to his case; People v. Ikerd, 47 Ill.2d 211, 265 N.E.2d 120 (1970), where the allegation in the post-conviction petition was based upon a right recognized for the first time after the defendant's direct appeal; and People v. Somerville, 42 Ill.2d 1, 245 N.E.2d 461 (1969), where the petitioner alleged that he was deprived effective assistance of counsel at trial. However, it is most significant to note that the Illinois Supreme Court went on in Somerville to invoke the waiver rule barring review of the petitioner's additional claim that her constitutional right to be free from unreasonable search and seizure was also violated. The Illinois Supreme Court held that, 'since no motion to suppress was made, nor was the issue raised in any way at the trial or in any way of the appeals, we must agree with the State that such claim is untimely made in this post-conviction proceeding.' 245 N.E.2d at p. 468." Petitioner's brief, pp. 9–10.

been waived unless "fundamental fairness" requires a different result.

 If the failure to object was a deliberate tactical decision made by the petitioner himself with a full understanding of his legal rights, it would clearly waive his federal, as well as his state, right to object to the use of that evidence. If, however, the failure was a tactical decision by his lawyer, made without his express approval, or was an oversight by trial counsel, petitioner contends that the waiver should be ineffective for federal purposes though it does end state review of the issue.

Petitioner relies on language from the opinion in Fay v. Noia which has been frequently quoted.[8] That case involved a collateral attack by one of three defendants convicted of murder on the basis of coerced confessions which had been received in evidence over their timely objections at the trial. Direct appeals and subsequent legal proceedings by the two co-defendants resulted in their release. Fay had not appealed, apparently fearing that a new trial might ultimately result in the imposition of the death penalty. Under New York practice, his failure to appeal waived error in the admission of his coerced confes-

sion. On review of the district court's denial of federal habeas corpus relief, the Supreme Court held the waiver ineffective. See 372 U.S. at 446, 83 S.Ct. 822.

The Court's opinion emphasizes the importance of the defendant's participation in the waiver decision.[9] It is worthy of note, however, that the Court did not say that a decision made by counsel, in which the defendant did not participate, can never bar relief. On the contrary, the Court stated only that such a decision "does not automatically bar relief." 372 U.S. at 439, 83 S.Ct. at 849. We infer that in some situations the acts of counsel, although not explicitly approved by the defendant, may fairly effect a waiver.

If counsel is to have the responsibility for conducting a contested criminal trial, quite obviously he must have the authority to make important tactical decisions promptly as a trial progresses. The very reasons why counsel's participation is of such critical importance in assuring a fair trial for the defendant, see Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158, make it inappropriate to require that his tactical decisions always be personally approved, or

8. ". . . the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461], . . . 'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only

after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. . . . the standard here put forth depends on the considered choice of the petitioner. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. . . . Each case must stand on its own facts." 372 U.S. at 438–440, 83 S.Ct. at 849.

9. That emphasis is, of course, entirely appropriate with respect to major decisions, such as the entry of a guilty plea, the waiver of the privilege against self-incrimination, or the decision not to appeal, which are appropriately made only with a full understanding of the consequences of the available alternatives. In such cases, counsel's advice is of the utmost importance, but ultimately the client's decision is controlling. The waiver in Fay v. Noia was of that character.

even thoroughly understood, by his client. Unquestionably, assuming the lawyer's competence, the client must accept the consequences of his trial strategy. A rule which would require the client's participation in every decision to object, or not to object, to proferred evidence would make a shambles of orderly procedure.

█ We have no doubt that a deliberate tactical decision by competent counsel not to object to the admission of evidence may waive his client's right to claim that the use of the evidence was constitutional error. In this case, however, petitioner claims that the failure to object was the result of an "oversight" by his lawyer. He implicitly argues that the effectiveness of a waiver turns on a subjective appraisal of the advocate's actual motivation. To make that appraisal he contends that an evidentiary hearing is required even though a perusal of the trial transcript strongly indicates that counsel made a deliberate tactical decision to permit officer Welsh to testify about the in-custody statement. We believe the Court's recent decision in Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L. Ed.2d 216 (1973), dictates rejection of that argument.

In *Davis* the Court held that a collateral attack on a federal conviction based on a claim of unconstitutional discrimination in the composition of the grand jury was foreclosed by the failure to make the objection in advance of trial. The waiver rule which the Court enforced, Rule 12(b)(2) of the Federal Rules of Criminal Procedure, provides that the failure to raise any defense to the institution of the prosecution by motion before trial "constitutes a waiver thereof, but the Court for cause shown may grant relief from the waiver." This rule is not unlike the Illinois waiver rule which forecloses collateral relief unless "fundamental fairness" makes relief from the waiver appropriate. Since the federal rule barred the constitutional claim even though the failure to make a timely objection may well have been the product of counsel's oversight, rather than deliberate, the Court squarely rejected the argument that cases applying the rule of Fay v. Noia make any waiver of constitutional rights ineffective unless deliberately made and expressly approved by the defendant. Even the dissenting opinion in *Davis* would accept certain oversights—or at least failure to act with diligence—as a "deliberate relinquishment" of a constitutional claim.[10]

█ The question of whether there has been an effective (or "deliberate") waiver turns, we believe, not on subjective motivation, but on an evaluation of the act or omission giving rise to the waiver, as well as the significance of its consequences. So analyzed, we are persuaded that the failure to object at trial to the admissibility of testimony describing petitioner's in-custody statement gave rise to the kind of waiver that should be placed in the same category as a "deliberate by-pass" of state remedies barring subsequent collateral attack in the federal courts.

█ The facts which we find persuasive are these: First, the omission giving rise to the waiver occurred in the trial court as well as on appeal.[11] Sec-

10. In his dissenting opinion Mr. Justice Marshall stated: "I have little difficulty in saying that, where one must present evidence in order to support a constitutional claim, the failure to exercise due diligence in searching for that evidence is a deliberate relinquishment of that claim." 411 U.S. at 256, 93 S.Ct. at 1590.

11. In this respect this case is therefore like *Davis* and unlike Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, and Fay v. Noia, *supra*, which the dissenters in *Davis* considered controlling. Accordingly, if a federal court were now to entertain petitioner's collateral attack, it would be reviewing an issue which has never been presented to any Illinois judge. It is noteworthy that in *Kaufman* the first point made in explanation of the inapplicability of the "deliberate by-pass" claim was that "counsel had objected at trial. . . ." 394 U.S. at 220 n. 3, 89 S.Ct. 1068.

ond, there was a reasonable tactical basis for counsel's failure to object to the statement. Third, the claim in this case is entitled to no greater respect than the constitutional claim which the Court rejected in *Davis*. The rule of the *Escobedo* case is not applied retroactively, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882;[12] it is enforced for prophylactic reasons and does not call into question the accuracy of the fact-finding process.[13] Nor does this case involve conduct offensive to civilized standards of decency.

We therefore conclude that even if petitioner is correct in his interpretation of the Illinois waiver rule, the order dismissing the habeas corpus petition must be affirmed.

Affirmed.

12. *Cf.* Curtis Publishing Co. v. Butts, 388 U.S. 130, 145, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (opinion of Mr. Justice Harlan).

13. Compare Mr. Justice Black's comment in dissent in Kaufman v. United States:

"It is this element of probable or possible innocence that I think should be given weight in determining whether a judgment after conviction and appeal and affirmance should be open to collateral attack, for the great historic role of the writ of habeas corpus has been to insure the reliability of the guilt-determining process.

\* \* \* \* \*

"I would not let any criminal conviction become invulnerable to collateral attack where there is left remaining the probability or possibility that constitutional commands related to the integrity of the fact-finding process have been violated. In such situations society has failed to perform its obligation to prove beyond a reasonable doubt that the defendant committed the crime." 394 U.S. at 234, 241, 89 S.Ct. at 1078, 1081.