**UNITED STATES of America ex rel. John B. ADAMS, Petitioner-Appellant,**

v.

**Peter BENSINGER, Director, Department of Corrections, and John Twomey, Warden, Respondents-Appellees.**

**No. 73–1531.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1974.

Decided Dec. 10, 1974.

Certiorari Denied April 14, 1975.
See 95 S.Ct. 1589.

---

Ivan E. Bodensteiner, Max G. Messman (Law Student), Valparaiso, Ind., for petitioner-appellant.

William J. Scott, Atty. Gen., Steven J. Rosenberg, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before SWYGERT, Chief Judge and FAIRCHILD and SPRECHER, Circuit Judges.

SWYGERT, Chief Judge.

This appeal represents what we hope will be the last major step in a seven year legal battle to have the federal courts consider the merits of petitioner John B. Adams' claim for habeas corpus relief.

In 1963 petitioner, with two co-defendants, was convicted of murder in an Illinois court and sentenced to a prison term of thirty-five to seventy years. On direct appeal to the Illinois Supreme Court his conviction was affirmed. People v. Henderson, 37 Ill.2d 489, 229 N.E.2d 519 (1967). Petitioner then filed a habeas corpus petition in the United States District Court for the

Northern District of Illinois, alleging that an involuntary confession had been used against him. On January 11, 1968 this petition was dismissed for failure to exhaust state remedies. On appeal to this court the order of dismissal was vacated and the cause was remanded to the district court for review of all documents before the Illinois Supreme Court to determine whether the voluntariness issue had been squarely presented to and considered by that court. Adams v. Pate, 418 F.2d 815 (7th Cir. 1969). On remand, the district court again dismissed for failure to exhaust state remedies. That order was affirmed by this court with the suggestion that petitioner had state remedies available under the Illinois Post-Conviction Hearing Act.[1] Pursuant to this suggestion, a petition for state post-conviction relief was filed before the original trial judge in 1970. An evidentiary hearing was held on the issue of the involuntariness of the confession, but on March 19, 1971 the trial judge, without making a finding on the ultimate question of the voluntariness of the confession, denied petitioner any relief apparently on the basis of res judicata and waiver. On September 20, 1972 the Illinois Supreme Court affirmed on the ground that "inasmuch as the issue of the voluntariness of his confession was decided adversely to petitioner on direct appeal, reconsideration of the issue is barred by *res judicata.*" People v. Adams, 52 Ill.2d 224, 225, 287 N.E.2d 695, 696 (1972).

Petitioner then filed the federal habeas corpus petition that is the subject of this appeal. Again the issue raised was the use of a confession that was allegedly involuntary in view of the totality of the circumstances. The district court dismissed the petition without a hearing on the basis that the petitioner had waived this claim by not raising it in the state courts. The court added that even if the issue were before it, the confession would be deemed voluntary.

# I

Our initial question is whether for purposes of federal habeas corpus relief the petitioner has waived the claim of an involuntary confession by failing to raise the contention in terms of the "totality of the circumstances." We do not think that there has been such a waiver.

■ The test to be applied is whether there was a deliberate tactical decision to forego this claim. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). It appears to us that the issue was at least implicity brought before the state courts and that there is no basis for concluding that the failure to pursue the matter more forcefully in the state courts was an attempt to derive a tactical advantage. Prior to trial a motion to suppress the confession was made and considered. The state courts both at the trial and appellate level were put on notice that the admissibility of this confession was being challenged on due process grounds. Moreover, this objection was made at the earliest desirable point.[2] Admittedly, the arguments concerning the inadmissibility of the confession were directed mainly at the failure to give the type of warnings later required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Still, as respondents point out, almost all the evidence upon which petitioner now relies was introduced at the original suppression hearing. These factual elements were put before the judge in the context of an attack upon the admissibility of the confession and the court had the opportunity to determine that the confession was involuntary in view of all the circumstances. Nor is it certain that this issue was not

---

1. For this court's present view of when relief must be sought under the Illinois Post-Conviction Hearing Act before a federal habeas corpus petition will be entertained see

United States ex rel. Williams v. Brantley, 502 F.2d 1383 (7th Cir. 1974).

2. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

presented on direct appeal, even though the briefs were directed at the *Miranda* question. The Illinois Supreme Court apparently believed that it had considered the issue, since it later ruled that the post-conviction petition was barred by res judicata rather than by the doctrine of waiver which also bars relief under the Illinois Post-Conviction Hearing Act. See United States ex rel. Williams v. Brantley, 502 F.2d 1383 (7th Cir. 1974).

█ This is not simply a case in which there was a failure to raise a certain argument or object to particular evidence in order to further an intended strategic maneuver. The filing of the motion to suppress is conclusive proof that there was no desire to allow the introduction of the confession. We do not find persuasive the fact that at trial Adams denied ever making the confession. The question before us is a legal one concerning the constitutionality of the confession. That question could have been presented to a court without infringing on the ability to deny the fact that the confession was ever given. Indeed, despite this denial a constitutional attack on the confession was entertained on direct appeal.

We are presented with an important claim that does "call into question the accuracy of the fact-finding process." [3] There was no tactical reason to avoid raising the contention in the state courts. Notice of objection to the confession was given at the appropriate time. The highest court in Illinois has indicated that the issue was in fact considered. There has been no deliberate by-pass of state remedies and petitioner is entitled to have a federal court finally consider the merits of this alleged constitutional deprivation.

## II

█ We have determined that the ultimate question of the voluntariness of this confession is also before us. The district court did address the merits.

An evidentiary hearing is unnecessary since there was one in state court on the post-conviction petition and the adequacy of that hearing is not being challenged. Further, the habeas corpus petition itself requests relief on the basis of the state record alone. Petitioner's counsel has conceded that there is no additional evidence to be submitted. Accordingly, we have requested and received supplemental briefs discussing this question.

The facts relevant to this inquiry are as follows. The police, without a warrant, took the petitioner from his bed at about 1:00 a. m. on December 28, 1962 and placed him under arrest. He was then taken to a police station where, for at least some period of time, he was locked to a radiator. Several police officers questioned petitioner for the admitted purpose of getting a confession, if possible. However, petitioner was never informed of his right to remain silent or his right to have a lawyer present. At approximately 2:30 a. m. an assistant state's attorney arrived at the police station with a court reporter. The assistant state's attorney questioned Adams and his two co-defendants who had also been arrested. He then proceeded to take recorded statements from each of them in the form of questions and answers. Petitioner's statement was the last to be taken and commenced at 5:10 a. m. A joint statement was also given beginning at 6:05 a. m. The assistant state's attorney had not informed petitioner of his right to remain silent and his right to the assistance of counsel, although petitioner had stated that he could neither read nor write English and had only a third grade education.

At about 7:00 a. m. petitioner was transferred to the police department central detention facility. At about 1:00 p. m. he was transferred to the Criminal Courts Building and taken to the library where, at about 2:30 p. m., in the presence of a police officer and an assistant state's attorney, he initialed and signed the confession after it was

---

3. United States ex rel. Allum v. Twomey, 484 F.2d 740, 746 (7th Cir. 1973).

read aloud to him. Petitioner was finally taken before a judge on December 29, 1962.

It was later established that the petitioner had no prior police record. At the post-conviction petition hearing considerable evidence concerning the petitioner's mental capacity was introduced.[4] Petitioner's intelligence quotient was found to be in the range of 56 to 62, indicating a person who is "mentally defective." A trained behavioral scientist explained that one who is "mentally defective" would have defective comprehension of oral or written directions or communications, especially when under tension or in strained surroundings. Adams' ability to depend on his memory was also impaired. A clinical psychologist described petitioner as a "very naive, simple man, who could very well, very easily be influenced, who is quite unsophisticated and not aware of relationships in the world." He further testified that petitioner was "very cooperative but very docile."

■ The test to be applied in cases such as this in which *Miranda* is not applicable is based on those "standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and *Escobedo* . . . ." Davis v. North Carolina, 384 U.S. 737, 740, 86 S. Ct. 1761, 16 L.Ed.2d 895 (1966). The Supreme Court has recently summarized these standards in Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973):

> In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, *e. g.*, Haley v. Ohio, 332 U.S. 596, [68 S.Ct. 302, 92 L.Ed. 224]; his lack of education, *e.*

> *g.*, Payne v. Arkansas, 356 U.S. 560, [78 S.Ct. 844, 2 L.Ed.2d 975]; or his low intelligence, *e. g.*, Fikes v. Alabama, 352 U.S. 191, [77 S.Ct. 281, 1 L.Ed.2d 246]; the lack of any advice to the accused of his constitutional rights, *e. g.*, Davis v. North Carolina, 384 U.S. 737, [86 S.Ct. 1761, 16 L.Ed. 2d 895]; the length of detention, *e. g.*, Chambers v. Florida, *supra*, [309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716]; the repeated and prolonged nature of the questioning, *e. g.*, Ashcraft v. Tennessee, 322 U.S. 143, [64 S.Ct. 921, 88 L.Ed. 1192]; and the use of physical punishment such as the deprivation of food or sleep, *e. g.*, Reck v. Pate, 367 U.S. 433, [81 S.Ct. 1541, 6 L.Ed.2d 948]. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. Culombe v. Connecticut, *supra*, [367 U.S. 568] at 603, [81 S.Ct. 1860.] at 1879, 6 L.Ed.2d 1037]. (footnote omitted)

Thus, we must look to the merits of each individual factor, but ultimately the decision as to voluntariness should be based on an evaluation of the totality of all the circumstances.

■ We believe there are three elements which call into question the voluntary nature of this confession. The first is the undisputed fact that petitioner was never informed that he had a right to remain silent and a right to the assistance of counsel. The assistant state's attorney failed to inform him of these rights although he was aware of how little education the petitioner had and how unlikely it was that he knew of these rights. This failure to inform petitioner of these rights is an important element in our equation regardless of the inapplicability of *Miranda*, since the fact "that a defendant was not advised

---

4. While this evidence was based on tests and examinations given petitioner when he entered prison in 1964, we see no reason to question that the conclusions adequately portray petitioner's mental capacity when he gave the alleged involuntary confession.

of his right to remain silent or his right respecting counsel at the outset of interrogation, as is now required by *Miranda*, is a significant factor in considering the voluntariness of statements later made." Davis v. North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966). The weight to be accorded this fact is particularly great in light of petitioner's lack of previous contact with the police.

The second factor concerns the timing of the interrogation. Petitioner was apparently awakened by the police. The questioning occurred during the middle of the night and petitioner most certainly suffered from lack of sleep. The clear purpose of this questioning was to get a confession if at all possible. The voluntary character of this desired confession is lessened by the hour of the day during which it was given.

The final and most substantial consideration involves the nature of petitioner himself. A significant doubt is cast over the confession of a man of such low intellect and limited education. While petitioner was capable of giving a voluntary confession, the expert testimony of his inability to understand communications and his docile nature necessitate a skepticism concerning the voluntariness of his confession.

■ The district judge, however, greatly discounted this psychological testimony because his reading of petitioner's testimony at trial and at various hearings indicated that Adams' answers were "always responsive and lucid," even under cross-examination. We agree that it is proper to consider such testimony and our own reading of petitioner's answers has convinced us that there is some merit to this conclusion. But what the court below has failed to take into account is the fact that at the time of this testimony petitioner was represented by counsel who undoubtedly prepared him. The clinical psychologist testified that Adams' apparent recognition in court of the function of a warrant was

not conclusive, since he could have been prompted to give an answer without real understanding. The undisputed results of objective intelligence tests are of overriding significance. Our concern is with petitioner's abilities during a period in which he had not received the assistance of counsel and had no one to advise him. We believe the expert psychological testimony is helpful in this regard.

Indeed, the facts of this case are strikingly similar in this aspect to those in United States v. Hull, 441 F.2d 308 (7th Cir. 1971), where we relied heavily on the defendant's limited mental capabilities in determining that his confession was involuntary. *Hull* was described as follows:

> J. L. Hull is a 34 year old Negro who is mentally defective. His full-scale I.Q. is 54, and he has the mental age of an eight or nine year old child. He completed the third grade in school and is illiterate. Psychiatric experts termed him passive and easily led by a more dominant personality. Hull can follow instructions if they are repeated or paraphrased for him several times; otherwise he has a tendency to lose his attention and comprehension.[5]

Based on that description we found that *Hull* "was ill-equipped to combat 'the diverse pressures which sap or sustain his powers of resistance and self-control'." [6] The same must also have been true of Adams.

■ Viewing all these factors together has led us to conclude that petitioner's confession was involuntary. Respondents address each consideration separately and argue that each is not necessarily sufficient in and of itself to support this conclusion. Our task is to consider the combination of all these elements. Even if we were to accept the proposition that no one factor is conclusive, we still must look to the totality. What we find is a confession given in the middle of the night by a tired, inex-

5. 441 F.2d at 309.

6. 441 F.2d at 312.

perienced, uneducated, docile, mentally defective man who was never even informed that he did not have to talk and that he was entitled to the aid of an attorney. Such a confession is not "the product of a rational intellect and a free will." Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960).

The judgment of the district court is reversed and this cause is remanded to the district court with direction that the writ issue unless the petitioner is given a new trial within 120 days of the date of the mandate of this court.