990 F.2d 1259
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Guillermo PLASCENCIA, Petitioner-Appellant,
v.
Wayne ESTELLE, Warden, Respondent-Appellee.
 No. 91-55558.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 10, 1992.*
Decided April 13, 1993.
 
 Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Guillermo Plascencia appeals the denial of his petition for habeas corpus under 28 U.S.C. § 2254, contending two confessions introduced against him at trial were not voluntarily made and that he did not voluntarily, knowingly, and intelligently waive his Miranda rights. Miranda v. Arizona, 384 U.S. 436 (1966). We conclude this case cannot be fairly distinguished from Collazo v. Estelle, 940 F.2d 411 (9th Cir.1991) (en banc), and therefore reverse.
 
 
 3
 * On July 7, 1984, 22-year-old Plascencia was in the San Diego County jail on charges unrelated to this case. At 1:00 o'clock that morning, Los Angeles Police Officers, who suspected him of murder, transported him to the Hollywood Police Station, where interrogation was commenced at 4:00 a.m. by three police officers. Because Plascencia spoke limited English, one of the officers who spoke Spanish acted as an interpreter.
 
 
 4
 After the officers advised Plascencia of his constitutional rights, he stated on four occasions during the twenty minute interview that he wished to remain silent and wanted a lawyer. The officers continued the interrogation for thirteen minutes after Plascencia requested an attorney. Early in the interrogation, one of the officers said in response to Plascencia's answer to a question: "You are full of shit! Do you understand that?" The officers sought to persuade Plascencia to talk, telling him several people had already implicated him and this was his chance to present his side of the story. When Plascencia realized he was being accused of shooting someone, he again asked for a lawyer. The officers then told him he was arrested for murder, and continued the questioning. Plascencia repeated his request for a lawyer. The police told him he would not get a lawyer then, but only when he was arraigned sometime during the following week. The first interrogation was then terminated and the officer who had acted as an interpreter took Plascencia from the interrogation room to the booking area in the police station. Plascencia expressed concern that the officers were angry at him for not talking.
 
 
 5
 The walk from the interrogation room to the booking area took three to five minutes. According to the escorting officer, Plascencia's demeanor changed during this short interval. He appeared to be engaged in "heavy thinking;" his body slumped and he became "teary-eyed." He then said to the interpreter: "Look, look, you have to understand the guy had no soul in God's eyes. I had to kill him ... you got to understand why I did it."
 
 
 6
 The officer responded: "Hold off. Wait a minute. You told me you didn't want to talk." Plascencia responded, "Well, I--I decided I want--you got to understand why I did it." The officer returned Plascencia to the interrogation room and told the other officers Plascencia had decided to talk. The officers repeated the Miranda warnings, Plascencia waived his rights to remain silent and to have a lawyer present, and confessed to the killing.
 
 
 7
 The state court found the booking statement was a spontaneous declaration resulting from a change of mind, not from police interrogation, threats, or inducements; the decision to resume the interrogation was Plascencia's; Plascencia's subsequent confession was voluntary; and Plascencia validly waived his Miranda rights in the second interrogation. The trial court admitted the booking area statement and the confession at trial. Plascencia was convicted of first degree murder and sentenced to twenty-seven years to life in prison. After appealing unsuccessfully through the state courts, Plascencia filed this petition, which was denied.
 
 II
 
 8
 We review the voluntariness of Plascencia's statements de novo to determine " 'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution.' " Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc) (quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)). We note that " 'the admissibility of a confession turns as much on whether the techniques for extracting the statements, as applied to this suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne.' " Collazo, 940 F.2d at 415 (quoting Miller, 474 U.S. at 116) (emphasis in original). The state must prove the voluntariness of the confession by a preponderance of the evidence. Collazo, 940 F.2d at 420, 421 (citing Lego v. Twomey, 404 U.S. 477, 489 (1972)).
 
 
 9
 Plascencia argues the failure of the police to honor his request for a lawyer during the first interrogation renders the booking area statement and his later confession involuntary. His argument presents two questions: First, whether the first interrogation was coercive, and second, whether that coercion tainted his later statements.
 
 
 10
 The first interrogation was coercive under Collazo. The police officers violated the rule established in Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), that police-initiated interrogation must cease when a suspect invokes his right to counsel. Plascencia twice said he wished to remain silent, and twice stated he wanted a lawyer. His requests were ignored and the interrogation continued for another thirteen minutes. During that time Plascencia again asked for a lawyer and was then told the officers were arresting him for murder. Still the interrogation continued. Twice more Plascencia asked when he was to see his promised lawyer, but without effect; he was told "You are not getting a lawyer now," and the questioning was continued. "At a point where the law required [the interrogating officers] to back off, [they] did not 'scrupulously honor' [Plascencia's] right to cut off questioning; [they] stepped on it." Collazo, 940 F.2d at 417; see also id. at 417-18 (finding repeated Edwards violations constituted "badgering" of the accused). The words used by the police during the interrogation were also coercive: The detective shouted and swore at Plascencia. See Collazo, 940 F.2d at 416-17 (coercive language used by officers renders interrogation coercive). Finally, the context itself was coercive. Plascencia was taken from his cell in the middle of the night, transported several hours to another police station, and interrogation was initiated at 4:00 in the morning. See United States ex rel. Adams v. Bensinger, 507 F.2d 390, 395 (7th Cir.1974) (where interrogation takes place during "middle of the night ... [t]he voluntary character of [the] confession is lessened by the hour of the day during which it was given."). Considering the totality of the circumstances, we find the police "used 'objectively unacceptable methods to coerce [the defendant] into waiving his right to silence....' " Collazo, 940 F.2d at 415 (quoting United States v. Wolf 813 F.2d 970, 976 n. 16 (9th Cir.1987)).[1]
 
 
 11
 The state argues that even if the first interrogation was coercive, Plascencia's statements were not the product of that coercion. It is true that Plascencia made no incriminating statements during the first interrogation, but the coercion in the first interrogation may linger and infect later statements. The effect of prior police coercion on later statements by an accused depends on "whether (1) there was a break in the stream of events sufficient to insulate the statement from the effect of the prior coercion, (2) it can be inferred that the coercive practices had a continuing effect that touched the subsequent statement, (3) the passage of time, a change in the location of the interrogation, or a change in the identity of the interrogators interrupted the effect of the coercion, and (4) the conditions that would have precluded the use of a first statement had been removed." Collazo, 940 F.2d at 421 (citing United States v. Patterson, 812 F.2d 1188, 1192 (9th Cir.1987)); see also Brown v. Illinois, 422 U.S. 590, 603-04 (1975). In this case, as in Collazo, the record makes clear that Plascencia's statement at the booking area was "nothing less than the delayed product " of the earlier coercion. 940 F.2d at 423 (emphasis in original). There was no "break in the stream of events ... sufficient to insulate the [booking area] statement from the effect of all that went before." Clewis v. Texas, 386 U.S. 707, 710 (1967). Only three to five minutes separated the first interrogation from the booking area statement. Plascencia remained in the police station, in the presence of one of the officers involved in the interrogation. Plascencia's demeanor at the booking area indicated the effects of the earlier coercive conditions had not been dissipated. We conclude that " 'the evidence to which ... objection is made has been come at by exploitation of [the prior] illegality [instead of] by means sufficiently distinguishable to be purged of the primary taint.' " Collazo, 940 F.2d at 421 (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963)).
 
 
 12
 The state argues the booking area statement is admissible under the narrow exception to Edwards which allows continued interrogation of a suspect, even after an initial request for counsel, where the "accused himself initiates further communications, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. Again, Collazo is instructive:
 
 
 13
 Although the words and even the actions that could normally be construed as "initiation" were present [in the booking area statement], an analysis of the substance of the entire transaction--rather than the isolated form of the [booking area statement]--demonstrates that [Plascencia] did not "initiate" further conversation as that term is used in Edwards, or in Justice Rehnquist's plurality opinion in [ Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983) ] ("initiation" of a conversation by a suspect may be found based on an unbadgered desire for a generalized discussion about the investigation).
 
 
 14
 Collazo, 940 F.2d at 423. For the same reasons, the booking area statement in this case was coerced and must be excluded.
 
 
 15
 Plascencia's confession in the second interrogation must also be excluded as the delayed product of the coercive first interrogation. No intervening events isolated the second interrogation from the coercive effects of the first. The readministration of Miranda warnings did not remove the taint of the prior coercion in this context. See id. at 423 ("Under the circumstances, [the] readvice of rights and [defendant's] alleged waiver thereof was an empty ceremony.").
 
 
 16
 We conclude that both Plascencia's booking area statement and his confession during the second interrogation were inadmissible as involuntary. The case is remanded to the district court for appointment of counsel for Plascencia and a determination whether the admission of these two statements was harmless error under Arizona v. Fulminante, 111 S.Ct. 1246, 1257 (1991).
 
 
 17
 Reversed and remanded.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The state seeks to distinguish Collazo on the ground that in Collazo, unlike this case, officers told the suspect it "might be worse" for him if he asked for a lawyer. 940 F.2d at 417. Despite this difference, Plascencia's interrogation was at least as coercive as that suffered by Collazo: The officers used similarly menacing language and the Edwards violation was more egregious