(No. 32829.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* LESLIE GEORGE WAKAT, Defendant in Error.

*Opinion filed September 24, 1953.*

LATHAM CASTLE, Attorney General, of Springfield, and
JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN
T. GALLAGHER, ROBERT McDONNELL, and WILLIAM J.
McGAH, JR., all of Chicago, of counsel,) for the People.

CHARLES SHANNER, and CALVIN SAWYIER, both of
Chicago, for defendant in error.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of
the court:

After a hearing under the Post-Conviction Hearing Act,
the criminal court of Cook County set aside a judgment
convicting Leslie George Wakat of burglary and sentencing
him to the penitentiary, and granted him a new trial. By
this writ of error, the People seek to review the judgment
entered in the post-conviction proceeding.

Wakat was convicted after a jury trial and was sen-
tenced to imprisonment in the penitentiary for a minimum
term of ten and a maximum term of twenty years. It is
not disputed that he was without funds to finance a review
of his conviction.

His petition under the Post-Conviction Hearing Act
(Ill. Rev. Stat. 1949, chap. 38, pars. 826-832,) alleges that
in the proceedings which resulted in his conviction peti-
tioner's constitutional rights were violated in numerous
respects. Of the many claims made, only two are now
pertinent: (1) that a written confession, admitted in evi-
dence against him, had been dictated by the police and his
signature thereto coerced, and (2) that perjured testimony
was knowingly used against him by the prosecuting officers.

A motion by the People to dismiss the petition was sus-
tained. Upon a writ of error, we reversed the order dis-
missing the petition, and remanded the cause with directions
that the People file an answer and that a hearing be had
upon the merits. The answer which was filed denied peti-

tioner's allegations and with respect to the confession stated that in any event its voluntary character was *res judicata* because that issue was submitted and decided at the original trial. Evidence was heard, and at the conclusion of the hearing judgment was entered granting petitioner a new trial.

To reverse that judgment the People contend (1) that upon a post-conviction hearing an issue of fact which was previously decided adversely to the petitioner at his original trial cannot be questioned, but the hearing is to be limited to the existence of constitutional defects in the orginal proceedings which prevented a fair adjudication of the issue, and (2) that the post-conviction hearing judge erred in considering evidence which was not before the trial judge and in re-evaluating the credibility of witnesses who had testified at the original trial.

Wakat was first arrested on September 21, 1946, by police officers investigating an arson and a burglary. He was released on a writ of *habeas corpus* on September 24, but was re-arrested late in the afternoon of the same day. There is neither doubt nor denial that he sustained serious injuries while in police custody after his rearrest. A report of the county jail physician, who examined him on September 27, described the prisoner as suffering multiple bruises and large areas of hemorrhage under the skin, a fracture of a bone in the right arm and injuries to the left leg and knee. He was hospitalized for eleven days and medically treated for several weeks as a result of these injuries.

· The substance of petitioner's testimony, both at the trial and at the post-conviction hearing is as follows: Soon after his rearrest on September 24, he was taken to the scene of the crimes of which he was suspected. While there, an officer named Harlib twisted his handcuffed arm behind his back and struck him in the face three or four times. Later he was taken to the police station gymnasium where he was

beaten for half an hour with a stick, a sandbag, and two blackjacks wielded by four officers in the presence of the city fire attorney. After this occurrence he was taken to various offices, then returned to the gymnasium where the beating was resumed and continued until he lost consciousness. When he revived in a cell the following morning, officer Suckow showed him statements he had allegedly signed the previous evening and threatened him with further mistreatment if he did not "go through" with his confession. When he asked Suckow for medical treatment he was told that a doctor would be called if he repeated the text of the written confession he had signed. Thereafter he was questioned by an assistant State's Attorney, a police captain and other officials. While he answered the questions which they put to him, he said nothing of the beatings.

Of those charged with being present in the gymnasium when the alleged beatings occurred, two officers and the fire attorney testified that they had not struck petitioner and that no other person had struck him in their presence. A third officer, Suckow, was deceased at the time of the post-conviction hearing. At the trial Suckow had testified that the petitioner's injuries were received when he fell down a flight of stairs at the police station. Dr. Lipsey, Cook County jail physician, who examined petitioner, testified that his injuries could not have been caused by such a fall. At the post-conviction hearing there was testimony that Suckow had stated, at the petitioner's preliminary hearing, that petitioner was suffering from the injuries in question at the time of his arrest.

Harlib, the fourth officer, testified both at the original trial and at the post-conviction hearing, and it appears that certain discrepancies and incongruities in his testimony largely moved the hearing judge to set aside the conviction. Upon both occasions of his testimony, Harlib stated that he was taking petitioner to a washroom on the second floor

of the police station shortly after the rearrest and that they became engaged in a tussle which caused both men to fall down a flight of stairs consisting of about thirty steps. Just what precipitated the scuffle was not clearly shown at the original trial, but at the second hearing Harlib said petitioner had lunged for the officer's revolver. Harlib testified that both he and the prisoner had been injured in the fall, and that for thirty days following September 27, 1946, he was confined in a sanitarium in Milwaukee, Wisconsin, to receive treatment for his injuries.

At the post-conviction hearing it was brought out for the first time that Harlib had stated to the sanitarium authorities who were making up his admission records that he had sustained his injuries when he fell while getting out of his automobile. The hospital records also showed that he was not admitted as a patient until October 6, 1946. On cross-examination Harlib stated that he had not told the sanitarium authorities the true cause of his injuries because he was of a different religious faith than the hospital attendants and did not want to embarrass them or arouse their sympathy for him by telling them that he had been hurt in a scuffle with a prisoner. It was further brought out that Harlib did not report his alleged struggle with the petitioner to his superior or note his own injuries in the station accident book, as he was required to do by police department regulations, that he did not seek treatment by police department doctors, and that he went to the sanitarium during the period of his annual vacation rather than on sick leave.

Finding Harlib's testimony unworthy of belief, the post-conviction hearing judge held that petitioner had sustained the allegations of his petition and ordered a new trial. The People do not dispute that this finding is fully supported by the evidence, but challenge the post-conviction judge's power to consider issues litigated at the original trial and to receive evidence not heard at the original trial. In our

view, post-conviction judges have such power, as well as the obligation to exercise it.

The history of our Post-Conviction Hearing Act and the construction placed upon it by this court establish that it provides, and was meant to provide, an original and independent remedy by a proceeding, civil in nature, to investigate into the existence of a substantial denial of the constitutional rights of a prisoner in the proceedings which resulted in his conviction. (Jenner, The Illinois Post-Conviction Hearing Act, Smith-Hurd Ill. Ann Stat., chap. 38, supp, following par. 825, 9 F.R.D. 347; *People* v. *Bernatowicz*, 413 Ill. 181; *People* v. *Dale*, 406 Ill. 238.) The People concede this to be true, and likewise seem to admit that one of the constitutional issues which here permits the act to be invoked is the question of whether the confession admitted in evidence against petitioner was unconstitutionally coerced. They contend, however, that under principles said to have been laid down in *People* v. *Jennings*, 411 Ill. 21, the post-conviction hearing court may neither hear the evidence on the constitutional claim anew nor expand the original record by hearing additional evidence, but that it is limited to an inquiry which determines only whether there were some defects or irregularities at the original proceeding, which, through no fault of the petitioner, prevented him from fully presenting his constitutional claim for adjudication.

We do not find such limitations either in the statute or in the *Jennings case*. The statute contemplates a hearing at which "The court may receive proof by affidavits, depositions, oral testimony, or other evidence." (Ill. Rev. Stat. 1951, chap. 38, par. 831.) Nothing in the statute suggests that it is to apply only to those claims of deprivation of constitutional right which did not culminate in rulings of the court at the original trial. The *Jennings case* itself involved claims of coerced confessions which had been admitted into evidence at the original trial, after evidence as

to their voluntary or involuntary character had been heard, as in the present case. *Jennings* v. *Illinois,* 342 U.S. 104; *People* v. *Jennings,* 411 Ill. 21.

Basically, what the People contend for is the mechanical application of the doctrine of *res judicata,* which this court expressly rejected in the *Jennings case.* "Where it appears that a petitioner's claims were fairly asserted and litigated and the issues of fact have been resolved against petitioner by the judge or jury that heard the witnesses, due weight should be accorded that determination. But it is clear that *res judicata* cannot be mechanically applied to foreclose an inquiry which probes beneath the mere fact of adjudication to determine whether or not, in the process of adjudication, there has been any infringement of the constitutional rights of the petitioner. Such an inquiry must be made even though it involves a collateral attack upon a judgment which the court had jurisdiction and authority to enter." *People* v. *Jennings,* 411 Ill. 21.

As we stated in the *Jennings case, res judicata* is not applicable under the circumstances here presented. Quite apart from petitioner's inability to appeal from his original conviction, the voluntariness of the confession in this case would be subject to scrutiny on a post-conviction hearing because of newly discovered evidence of perjury with respect to testimony bearing on the confession issue. Moreover, *res judicata* can have no application to petitioner's allegation of knowing use of perjured testimony which was not, and could not, have been tried out at the original trial, and as to which new evidence must of necessity have been considered.

The hearing on a post-conviction petition is a new and independent investigation, with the hearing court authorized and required to use any proper procedure necessary and appropriate in order to discharge its duty of determining the existence or nonexistence of facts which would

constitute a denial of a claimed constitutional right. To hold, as the People contend, that the post-conviction hearing is but a form of appeal or limited review, in the course of which the hearing court is confined to a consideration of the testimony given at the original trial, would in no wise afford the petitioner the full and complete hearing upon his constitutional claims that was intended and to which we have held he is entitled. The contentions of the People overlook the fact that we are dealing here with a statute creating a new remedy designed to bridge the gaps between the pre-existing Illinois remedies and the remedy by way of Federal *habeas corpus*. (Jenner, The Illinois Post-Conviction Hearing Act, Smith-Hurd Ill. Ann. Stat., chap. 38, supp. following par. 825; 9 F.R:D. 347.) In a Federal *habeas corpus* proceeding, it is held that a trial court loses jurisdiction if there is a violation of constitutional right in the trial, or in proceedings leading up to it. (*Dowd* v. *United States*, 340 U.S. 206; *Waley* v. *Johnston*, 316 U.S. 101; *Johnson* v. *Zerbst*, 304 U.S. 458; Cf.: *United States* v. *Hayman*, 342 U.S. 205.) In such a proceeding, therefore, the adjudication at the original trial is not conclusive. If the Post-Conviction Hearing Act is to serve its purpose *res judicata* cannot be an automatic barrier to an investigation into alleged deprivations of constitutional rights.

To hold that the post-conviction court may not go beyond the original record in determining such claims would still leave claimants without an adequate remedy and would merely add to the procedural difficulties which the statute was intended to cure. Beginning with *People* v. *Dale*, 406 Ill. 238, our decisions have made it clear that a post-conviction proceeding is not an appeal or a limited review by an intermediate court, but is an original proceeding in which a petitioner who complies with the requirements of the statute is entitled to a full judicial hearing upon the

merits of the constitutional claims asserted. We conclude that the court did not exceed its authority when it reheard the evidence upon the claim asserted or when it permitted new and additional evidence to be introduced.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*