THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE EUGENE WILSON, Defendant-Appellant.

(No. 72-260; )

Fifth District—August 17, 1973.

W. K. Kidwell, of Mattoon, for appellant.

Robert W. Whitmer, State's Attorney, of Robinson, (Mark Weber, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Clarence Eugene Wilson, hereinafter referred to as the defendant, was found guilty by a jury of murder and attempt to commit burglary in the Circuit Court of Wayne County. He was sentenced to serve consecutive terms of 50 to 75 years and 10 to 12 years. The defendant appealed this conviction directly to the Illinois Supreme Court and the conviction was affirmed. *People v. Wilson*, 51 Ill.2d 302, 281 N.E.2d 626.

The defendant has sought post-conviction relief by petition filed in the Wayne County Circuit Court. The defendant alleges that his constitutional rights had been violated in that the State had knowingly used perjured testimony at his trial. A hearing was held on June 12, 1972, in the circuit court on that single issue. At the conclusion of the evidence, counsel for the petitioner argued in behalf of the petitioner and cited numerous cases. The State responded to the argument and at the conclusion of the arguments the State asked leave to court to submit a brief in response to the cases cited by the petitioner's counsel. Without objection by the defendant the court granted the State's request.

On June 20, 1972, the State filed the brief and also on June 20, 1972, the petitioner's retained counsel withdrew. The retained counsel did, however, file a "reply" brief on July 28, 1972.

The defendant, on July 11, 1972, filed *pro se* what he called "First Amended Post-Conviction Petition", which raised three new issues for review. The State filed a motion to dismiss this "First Amended Post-Conviction Petition" which was granted subsequent to July 14, 1972.

On July 14, 1972, the court entered its order denying the relief sought in the original petition. It is from this denial of relief that the defendant has brought this appeal. The Illinois Public Defender has been appointed to assist the defendant.

The defendant now presents to this court five issues for review. They shall be discussed in the reverse order presented.

■■ Did the court err in not ruling on defendant's "First Amended Post-Conviction Petition" filed July 11, 1972, before denying defendant's original petition on the 14th of July, 1972? The defendant states in his brief that he retained counsel to present six issues on post-conviction but counsel only presented one issue, that of the perjured testimony, at the post-conviction hearing. Thus the amended petition contained issues that could have been presented in the original petition. The defendant

has not cited any authority for his contention of error other than to direct our attention to the Post-Conviction Hearing Act. The denial of the defendant's "First Amended Post-Conviction Petition" does not go beyond the sound discretion of the trial court.

■■ The defendant states that the court erred at the post-conviction hearing in accepting argument by the State involving a count in the defendant's indictment that had been nolle-prossed at the trial. The argument was made without objection by the defendant. The failure to object can and is considered to be a waiver of the objection. *People v. Burage,* 23 Ill.2d 280, 178 N.E.2d 389, *cert.* denied, 369 U.S. 808, 7 L.Ed.2d 555, 82 S.Ct. 651.

> "In post-conviction proceedings the burden is upon the petitioner to demonstrate that he has been denied his constitutional rights. (*People v. Smith,* 45 Ill.2d 399.) To facilitate such a showing section 122—6 (Ill. Rev. Stat. 1969, ch. 38, par. 122—6) permits the court wide latitude in hearing evidence either by affidavits, depositions or oral testimony. Where witnesses are presented, we have held that the credibility and weight to be given the testimony is a matter to be determined by the trial judge and that determination is not to be questioned unless it appears to be manifestly erroneous. *People v. Logue,* 45 Ill.2d 170, 174; *People v. Dowmen,* 45 Ill.2d 197, 201." *People v. Watson,* 50 Ill.2d 234, 278 N.E.2d 79.

The next contention of the defendant is that the court erred in permitting the State to file a brief eight days after the hearing.

■■ The allowing of the filing of the brief by the State was within the discretion of the trial court and was allowed without objection of the defendant. *People v. Burage, supra. People v. Watson, supra.*

Next, the defendant asserts that the court erred in admitting evidence, not relevant to the post-conviction petition, over objection of defendant. The defendant contends that the evidence was a retrial of the defendant's guilt or innocence.

■■ The record indicates that the evidence admitted went to the credibility of the witnesses and was not a retrial of the defendant's guilt or innocence. Evidence that goes to the credibility of the witnesses, the evidence received, is within the sound discretion of the trial court. *People v. Wakat,* 415 Ill. 610, 114 N.E.2d 706.

The post-conviction hearing was held in the circuit court to determine if the defendant's constitutional rights had been violated by the State knowingly using perjured testimony. The defendant was originally convicted in part because of the testimony of two accomplices. The two testified at the trial that they had not been offered any deal or given any promises for leniency to testify. They also stated that their stories

had not been rehearsed before the trial and had not conversed with each other prior to trial. The evidence presented at the post-conviction hearing by the testimony of the same two accomplices was that they had prevaricated about being offered a deal and they had lied about not rehearsing their stories prior to the trial. One of the accomplices went further and testified that he had lied throughout the trial. This accomplice essentially repudiated his entire testimony at the original trial.

The former sheriff of Crawford County testified that he had been instructed to keep the two accomplices separated and that he had done this. There was discovered a small hole in the floor, apparently where a heating pipe had been located. The ex-Sheriff admitted that it may have been possible for the two to have conversed before the hole was discovered and patched.

The State's Attorney also testified and denied that he knew that the accomplices had conversed. He also testified that there was no promise of leniency given to the accomplices in exchange for their testimony at the defendant's trial. He testified that any promise of leniency made to the accomplices was solely dependant upon the establishment at the trial that the facts surrounding the murder were as the accomplices stated in their previous statements given to the State's Attorney prior to the trial.

The defendant asserts that the disposition of the present case is controlled by the case of *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

The *Napue* case involved circumstances where the State's Attorney had knowingly allowed an accomplice to testify that he had not been promised consideration when the State's Attorney had so promised. The accomplice in the *Napue* case at the time of the trial was, after having plead guilty, already in prison under a 199-year-sentence for the crime. The State's Attorney having promised to recommend a reduction be made in the accomplice's sentence and if possible effectuated.

The Court then stated at page 269:

> "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because that false testimony goes only to the credibility of the witness."

While we are keenly cognizant of these principles, we do not find that they apply to the facts of the instant case. In the instant case, there is no showing that the State's Attorney *knowingly* used any false testimony. There is only testimony of the accomplices that they were instructed by the State to rehearse their stories and to deny their rehearsal

upon the stand. This testimony is more than adequately rebutted by the testimony of the then sheriff and the State's Attorney.

A more difficult problem is presented with regard to the promise of leniency. The accomplices contend that they were promised a "deal" to testify at the trial of the defendant. And the accomplices also testified at the trial of the defendant. And the accomplices also testified at the post-conviction hearing that they were told prior to the original trial that no "deal" had been made.

The State's Attorney at the post-conviction hearing testified that he conditioned any bargain for leniency on the truthfulness of the given statements which could only be established at the defendant's trial. He contends that if these statements were not supported by the facts produced at trial there would have been no agreement with the two accomplices to receive leniency. The State contends that leniency was not in exchange for the testimony but was based upon the facts as to their participation in the crime and their past or lack of past criminal records. The testimony of the accomplices at the original trial was as follows:

# 1—Co-Defendant:

"Q. Was that (the charge of murder) dropped before or after you offered to testify for the State?

A. I offered to testify for the State as soon as I was taken into custody and brought over here in Illinois.

Q. You were offered no deal.

A. No.

Q. To testify?

A. None whatsoever.

Q. Have I or any person made any promises to you for leniency or otherwise to get you to testify here today?

A. No, sir.

Q. Have I or anyone else instructed you what to say here today?

A. No, sir.

Q. Have we stressed anything you should do in your conduct?

A. No, sir."

# 2—Co-Defetndant:

"Q. You have come to testify here today in this Court, have you been made any promises to testify?

A. No, sir, I haven't."

The State contends that this testimony was not perjury.

We must agree based upon the holding of the supreme court of this State in *People v. Somerville*, 42 Ill.2d 1, 245 N.E.2d 461. *Somerville* involved a post-conviction hearing also wherein the defendant contended

that the State knowingly permitted the use of perjured testimony. The court stated:

> "A post-conviction hearing was held on this issue to determine whether the witness Arnold perjured himself when he testified at defendants' trial that no promises were made to him that he would not be prosecuted for his crime. Although defendants had the burden of showing by clear and convincing evidence that Arnold lied, and that such perjured testimony was willfully given, and was so material to the issues as to have probably controlled the result (*People v. Ostrand*, 35 Ill.2d 520, 532, 221 N.E.2d 499; *People v. Alden*, 15 Ill.2d 498, 502, 155 N.E.2d 617) defendants called no witnesses, but offered only statements made by Arnold in subsequent trials for the same robbery." The court then concluded that inconsistencies in Arnold's testimony at the various trials at p. 12, 468 "fall short of establishing a knowing use of perjury, *People v. Tyner*, 40 Ill.2d 1, 3, 238 N.E.2d 377, 378." 42 Ill.2d 1, 11, 245 N.E.2d 461, 467.

We feel compelled to review the statement of facts in the Illinois Supreme Court's opinion as reported in *People v. Wilson, supra*, to indicate that the testimony of the accomplices, although certainly bearing on the result, did not probably control the result. *People v. Somerville, supra; People v. Ostrand, supra.*

The judgment of the trial court is affirmed.

JONES and G. MORAN, JJ., concur.