Docket No. 85409–Agenda 28–May 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LARRY SCOTT, Appellant.

Opinion filed October 26, 2000.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Larry Scott, brings this appeal from an order of the circuit court of Cook County denying his petition for post-conviction relief. Because the defendant received the death sentence for the underlying murder conviction, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a). For the reasons that follow, we affirm the judgment of the circuit court.

The defendant was charged with a number of offenses for the murder and sexual assault of a woman in Chicago in August 1984. Following a trial in the circuit court of Cook County, a jury found the defendant guilty of murder and attempted robbery and guilty but mentally ill of aggravated criminal sexual assault. After a bench sentencing hearing, the trial judge sentenced the defendant to death for the murder conviction and to 30 years’ imprisonment for the aggravated criminal sexual assault conviction; the judge did not sentence the defendant on the attempted robbery conviction. On direct appeal this court affirmed the defendant’s convictions and sentences. 
People v. Scott
, 148 Ill. 2d 479 (1992). The United States Supreme Court denied the defendant’s petition for a writ of 
certiorari. Scott v. Illinois
, 507 U.S. 989, 123 L. Ed. 2d 156, 113 S. Ct. 1590 (1993).

The defendant then initiated the present post-conviction action in the circuit court of Cook County, challenging his convictions and death sentence on a variety of grounds. The post-conviction court allowed the defendant an evidentiary hearing on one of the issues raised in the petition, concerning the defendant’s remorse for the offenses; after the hearing, the judge denied all relief. The defendant brings the present appeal to this court (134 Ill. 2d R. 651(a)), contesting the circuit court’s decision.

The Post-Conviction Hearing Act (725 ILCS 5/122–1 through 122–7 (West 1994)) allows a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. 
People v. Thompkins
, 161 Ill. 2d 148, 157 (1994). An action for post-conviction relief is a collateral proceeding rather than an appeal from the underlying judgment. 
People v. Williams
, 186 Ill. 2d 55, 62 (1999). To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that led to the judgment being challenged. 725 ILCS 5/122–1 (West 1994); 
People v. Morgan
, 187 Ill. 2d 500, 528 (1999). Principles of 
res judicata 
and waiver will limit the range of issues available to a post-conviction petitioner “to constitutional matters which have not been, and could not have been, previously adjudicated.” 
People v. Winsett
, 153 Ill. 2d 335, 346 (1992). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are 
res judicata
, and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. 
People v. Tenner
, 175 Ill. 2d 372, 378 (1997); 
People v. Coleman
, 168 Ill. 2d 509, 522 (1995).

The defendant’s primary focus in this appeal, as it was in the proceedings below, is on what effect his remorse for the offenses should have on his death sentence. The defendant argues that trial counsel was ineffective for failing to present, at the capital sentencing hearing, evidence of the defendant’s remorse. The defendant observes that the sentencing judge, in deciding to impose the death penalty in this case, found that there were no mitigating circumstances at all in this case; at sentencing, the judge said that the evidence did “not disclose one single iota of a mitigating factor.” The defendant further contends that remorse is recognized as a mitigating circumstance in death penalty jurisprudence and that the evidence introduced at the post-conviction hearing demonstrates that he was remorseful for these offenses. The defendant deduces from these propositions that he must receive a sentence other than death, given the presence of remorse in this case.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that counsel’s performance was so deficient that it fell below an objective standard of reasonableness, and that the defendant was so prejudiced by counsel’s conduct that he was denied a fair trial. 
Strickland v. Washington
, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064-65 (1984). To satisfy the second part of the 
Strickland 
test, a defendant must show “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

At the post-conviction hearing, the defendant testified briefly about his feelings regarding these offenses. The focus of his testimony was his belief that he deserved the death sentence because of the crimes he had committed. On direct examination, defense counsel asked the defendant first about his feelings at the time of trial, and then about his feelings at the time of the evidentiary hearing:

“Q. How did you then feel about what you did? Whether it was right or wrong, how did you feel about it?

A. I feeled [
sic
] like it was wrong.

Q. How do you feel about it today?

A. That it was wrong.

Q. Do you feel that it was wrong just for you or wrong for the lady you killed and her family? Do you have any remorse? Did you have any remorse then? What do you feel?

A. I feel the same way I did, that it was wrong.

Q. How wrong was it?

A. It was wrong enough to get the death sentence.”

At the evidentiary hearing, the defense also presented affidavits from the defendant’s two trial lawyers, Bob Lee and Don Paull. Both of them stated that experts who examined the defendant for fitness reported to counsel that the defendant said that he wanted to receive the death penalty. The lawyers also stated that the defendant said that he recognized that he what he did was wrong, that he was sorry, and that he wanted to be punished.

The same judge presided at both the defendant’s trial and the post-conviction proceedings below. The judge therefore could uniquely determine what likely effect the defendant’s additional evidence of remorse would have had on the prior decision. In this case, the judge concluded that presentation of this evidence at the sentencing hearing would not have altered his decision to sentence the defendant to death. In making this ruling, the judge commented on the brutality of the defendant’s offenses, including evidence that the defendant bit off the victim’s nipples and bit her vagina during the attack. The judge explained:

“Fifteen years after this event happened, when I was reading this file here this morning to refresh my recollection as to the facts, my blood still runs cold with the cruelty and the heinousness and the inhumanity and the cannibalistic fervor that was exhibited by this man as he killed this woman, bit off both her nipples, cannibalized her vagina orally.

He wasn’t satisfied with killing her, he had to cannibalize her body. He desecrated, he had no feeling of this woman as a human being.

So, no, I don’t have any feeling that what I did then was wrong and I don’t have any feeling that what I’m doing now is wrong, and I say for the record that the question of remorse, I accept it and I put it on the scales as I must, and it still doesn’t outweigh the heinous act that this man committed in taking that woman’s life.”

The judge’s findings demonstrate that he would not have imposed a different sentence on the defendant even if the evidence of remorse had been fully developed at the sentencing hearing, as the defendant now contends it should have been.

The post-conviction judge’s ruling must be affirmed unless it is manifestly erroneous. See 
People v. Morgan
, 187 Ill. 2d 500, 528 (1999); 
People v. Coleman
, 183 Ill. 2d 366, 385 (1998). We do not believe that it is. Our cases have previously held that the presence or absence of remorse may be considered at a capital sentencing hearing. 
People v. Barrow
, 133 Ill. 2d 226, 281 (1989); 
People v. Albanese
, 102 Ill. 2d 54, 80-81 (1984). The presence of remorse does not preclude a sentence of death, however. We believe that the post-conviction judge’s determination in this case is entitled to substantial deference, and we see no reason to reach a different result. The judge carefully considered the defendant’s new evidence, yet he still concluded that his original sentencing determination would not have been affected by that evidence. We cannot say that the post-conviction judge’s conclusion was against the manifest weight of the evidence. The offenses in the present case were particularly brutal, as the judge noted. Moreover, the expression by the defendant of his feelings regarding these crimes focused more on the appropriateness of the death penalty as punishment in this case, and less on a sense of contrition for his actions.

Even though the judge originally believed, at the time of the sentencing hearing, that no mitigation at all existed in this case, the new evidence of remorse, or of any other mitigating circumstance, does not now automatically compel a sentence other than death. At the conclusion of the second stage of a capital sentencing hearing, after the presentation of evidence in aggravation and mitigation, a sentence of death will be imposed unless the jury or judge, as the case may be, finds that there is mitigation sufficient to preclude a sentence of death. 720 ILCS 5/9–1(g), (h) (West 1996). Thus, the existence of mitigating evidence does not by itself bar imposition of a death sentence (
People v. Emerson
, 189 Ill. 2d 436, 493 (2000)); rather, the mitigating evidence must be sufficient to preclude a sentence of death, when considered together with the evidence in aggravation. In this case, the post-conviction judge found that the new evidence would not have precluded a sentence of death, even if that evidence had been introduced at the sentencing hearing.

The defendant next raises two related arguments concerning the scope and nature of the hearing conducted below. The defendant first contends that the post-conviction judge erred in limiting what evidence the defense could introduce at the hearing. In essence, the defendant believes that the proceeding was in reality a new sentencing hearing, and that the judge therefore should have allowed the defense to introduce further mitigating evidence, including, specifically, evidence about the defendant’s favorable adjustment to prison life. The defendant notes that evidence of good conduct while incarcerated is mitigating (
Skipper v. South Carolina
, 476 U.S. 1, 4-5, 90 L. Ed. 2d 1, 6-7, 106 S. Ct. 1669, 1671 (1986); 
People v. Davis
, 185 Ill. 2d 317, 345 (1998)), and he emphasizes that an individualized sentencing determination, based on the full range of information known about a defendant, is necessary in a capital proceeding (
People v. Thomas
, 178 Ill. 2d 215, 243 (1997); 
People v. McNeal
, 175 Ill. 2d 335, 368 (1997)).

We do not question the importance of an individualized sentencing determination to the proper application of the death penalty, nor do we dispute the possible mitigating force of evidence of a defendant’s favorable adjustment to institutional life. We do not agree with the premise of the defendant’s argument, however, that the proceeding below was actually a new sentencing hearing. Although the post-conviction judge on several different occasions made comments suggesting that he was holding a fresh sentencing hearing, we believe that the full measure of his remarks indicates that he understood that he was conducting only an evidentiary hearing on one part of the defendant’s post-conviction petition. For example, in court on November 13, 1997, when the prosecutor referred to the limited nature of the evidentiary hearing and disputed the defendant’s assertion that it was a new sentencing hearing, the post-conviction judge stated that he agreed with the prosecutor’s assessment of the status of the proceeding.

A brief consideration of the nature of post-conviction relief and of the availability of review for post-conviction decisions offers further support for our conclusion that the hearing below was not, and could not have been, a new sentencing hearing. If a judge hearing a post-conviction petition determines that a defendant should receive a new sentencing hearing, the State is entitled to appeal that determination, prior to the holding of a fresh hearing. 134 Ill. 2d R. 651(a); see 
People v. Joyce
, 1 Ill. 2d 225, 227 (1953); 
People v. Andretich
, 244 Ill. App. 3d 558, 559-60 (1993); see, 
e.g
., 
People v. Ruiz
, 177 Ill. 2d 368 (1997) (affirming, on State’s appeal, judgment of circuit court granting defendant post-conviction relief and ordering new sentencing hearing). Under the approach suggested by the defendant, however, a new sentencing hearing would be held, even before another court had an opportunity to review the order granting post-conviction relief. The defendant’s theory would thus deny the State review of the post-conviction judge’s decision. The availability of review of judgments granting post-conviction relief thus provides additional support for our conclusion that the judge below could not have intended for the evidentiary hearing to be a new sentencing hearing.

The defendant raises the related contention that he was entitled at the hearing below to elect whether the new evidence would be considered by a jury. Again, the premise for this argument is the notion that the proceeding was actually a new capital sentencing hearing, at which a defendant has a statutory right to a jury. 720 ILCS 5/9–1(d) (West 1996).

This argument is without merit. As we have explained, the proceeding below is properly characterized as an evidentiary hearing on one claim in the defendant’s post-conviction petition, and not a fresh sentencing hearing. The Post-Conviction Hearing Act establishes “an original and independent remedy by a proceeding, civil in nature” (
People v. Wakat
, 415 Ill. 610, 615 (1953)), that examines allegations of constitutional error, and its procedures are controlled by statute. Unlike statutes that specifically grant a defendant a right to a jury determination at certain proceedings, such as a capital sentencing hearing (720 ILCS 5/9–1(d) (West 1996)) or a fitness hearing (725 ILCS 5/104–12 (West 1996)), the Post-Conviction Hearing Act makes no provision for a jury. Accordingly, the defendant was not entitled to present to a jury the matters raised in his post-conviction petition. The correct procedure, which was followed in this case, was to have any evidence submitted to the post-conviction court alone, sitting without a jury. See 725 ILCS 5/122–6 (West 1996) (“The court may receive proof by affidavits, depositions, oral testimony, or other evidence”).

The defendant next raises a series of arguments concerning the jury instructions used at his trial, contending that he was denied the effective assistance of counsel by his attorneys’ failure to ensure that the jury was properly instructed. The defendant elected to be sentenced by the judge, so all the instructional questions arise from the guilt phase of the proceedings. The post-conviction court dismissed these allegations of error without an evidentiary hearing, and therefore our review is 
de novo
 (
People v. Coleman
, 183 Ill. 2d 366, 387-89 (1998)). The defendant raised many of the same issues on direct appeal, when he contested the jury instructions used at his trial. 
People v. Scott
, 148 Ill. 2d 479, 532-39 (1992). 
Res judicata 
bars our reconsideration of those questions here. Other issues were not raised on direct appeal but could have been, and the waiver doctrine precludes our consideration of those matters. We briefly summarize these issues below, setting forth what determination, if any, was made in the earlier appeal.

The defendant first challenges the failure to include a reference to the insanity defense within the issues instructions for each offense. This court rejected the same argument on direct appeal, however, concluding that the instructions used did not deny the defendant a fair trial (
Scott
, 148 Ill. 2d at 538), and we must therefore conclude that consideration of the issue here is barred by 
res judicata.

The defendant next questions the wording of the insanity instruction used at trial, asserting that the jury might have believed that the defense applied only to the charge of murder. Again, this court rejected the same argument on direct appeal, noting that the jury received four different verdict forms for each offense: not guilty, not guilty by reason of insanity, guilty, and guilty but mentally ill. 
Scott
, 148 Ill. 2d at 538-39. Further consideration of the issue here is therefore barred by 
res judicata. 
Nor is this argument aided by the defendant’s additional contention that counsel on direct appeal was ineffective because counsel failed to cite a particular decision, 
People v. Wells
, 110 Ill. App. 3d 700 (1982), in support of this allegation of error. We have examined that opinion, and we do not believe that there is a reasonable probability that our decision on this issue would have been different if the case had been cited to us on appeal.

The defendant also argues that the instructions used at trial were defective because one of them told the jury to determine whether he was insane on August 4, 1984, the day of the offenses, rather than at the specific time when he committed the offenses. This court considered the same contention on direct appeal and concluded that the instructions in their entirety correctly informed the jurors that they were to consider the defendant’s sanity at the time of the offenses. 
Scott
, 148 Ill. 2d at 539. 
Res judicata 
thus precludes us from reexamining the same question in this appeal.

The defendant also argues that the guilty but mentally ill (GBMI) instructions used at trial were defective and prejudicial. On direct appeal, this court addressed in detail the propriety of the instructions and agreed with the defendant that they were erroneous. After carefully considering the evidence in this case, the defense theory at trial, and the verdicts returned by the jury, the court concluded that the error in the instructions was harmless. 
Scott
, 148 Ill. 2d at 536-38. Again, principles of 
res judicata 
bar consideration of this issue here.

The defendant next complains that the trial judge, in reading the charges in the indictment to the jurors, stated that the defendant was pleading not guilty but did not mention at the same time, in referring to the plea, that the defendant was raising the insanity defense. Unlike the preceding issues, this question was not raised on direct appeal. We find, though, that the defendant has waived consideration of this question, for he could have raised it on direct appeal. The grounds for this issue were apparent from the trial transcript, and nothing precluded the defendant from raising it on direct appeal. We note, moreover, that the jury was fully aware of the defense theory at trial, which involved the defendant’s concession that he committed the present offenses and asserted insanity as a defense to them. 
Scott
, 148 Ill. 2d at 514. The trial judge instructed the jury on the insanity defense and provided the jury with the relevant verdict forms.

In his final challenge to the jury instructions used at trial, the defendant argues that the trial judge inserted confusing surplusage in one of them when he read it to the jury. Specifically, the judge told the jurors:

“A person is guilty but mentally ill at the time of the commission of an offense, a person is guilty but mentally ill if at the time of the commission of the offense, he was not insane but was suffering from a mental illness.”

It is clear that the judge misspoke when he began reading the instruction, omitting the word “if” when he said, “A person is guilty but mentally ill [if] at the time of the commission of an offense.” The judge then immediately corrected his error, repeating the opening clause and adding the omitted conditional. Again, the defendant failed to raise this issue on direct appeal, and it must therefore be deemed waived. In any event, we do not believe that the jurors misunderstood the judge’s meaning.

The defendant also raises a number of additional challenges to his convictions and death sentence, arguing that the post-conviction judge erred in denying him an evidentiary hearing on these questions. We will briefly summarize these additional issues.

The defendant first argues that he was denied the effective assistance of trial and appellate counsel when his lawyers failed to argue that placing the burden of proving insanity on the defense in a capital case violates the constitutional prohibition against cruel and unusual punishment found in the eighth amendment. This court has previously held that the provisions imposing this burden on the defense do not violate due process under the federal or state constitutions (
Scott
, 148 Ill. 2d at 540-43), and the defendant has not presented us with any reason that would warrant our reaching a different result under the eighth amendment.

The defendant also contends that a person who is mentally ill should not be subject to the death penalty. This court has previously held, however, that a person found guilty but mentally ill may be executed. 
People v. Crews
, 122 Ill. 2d 266, 280-81 (1988). Here, the jury found the defendant guilty of two of the offenses, murder and attempted robbery, and guilty but mentally ill of the third, aggravated criminal sexual assault. On review, this court concluded that death is not an excessive or inappropriate sentence in this case, notwithstanding the evidence of the defendant’s psychological problems. 
Scott
, 148 Ill. 2d at 561. The defendant argues further that the Illinois statutes, by placing the burden of proving insanity on the defense, fail to ensure that a capital defendant who receives the death penalty is not insane. As noted above, the assignment to the defense of the burden of proving insanity does not violate due process.

The defendant next contends that the Illinois death penalty statute violates equal protection because blacks do not have equal access to mental health treatment yet remain subject to the death penalty even if they are mentally ill. We conclude that the defendant has waived this objection. The defendant offers no data in support of his assertion regarding the unavailability of mental health treatment to minorities, and he failed to raise this point either at trial or on direct appeal.

The defendant argues that counsel on direct appeal acted under a 
per se 
conflict of interest because both she and the defendant’s two trial lawyers were from the office of the Cook County public defender. This court has previously rejected the argument that successive representation by members of the same agency gives rise to a 
per se 
conflict (
People v. Brown
, 172 Ill. 2d 1, 44 (1996)), and the defendant has not presented any further evidence that would cause us to reach a different result in his case.

The defendant also contends that trial counsel rendered ineffective assistance because of conduct that precluded this court from finding reversible error on direct appeal with respect to a number of issues. The defendant specifically refers to nine different instances in which trial counsel’s conduct led this court to conclude that the defendant had waived alleged errors or had otherwise forfeited the opportunity to complain of certain rulings or testimony. We will address these issues in the sequence in which the defendant raises them; in several instances, we have combined contentions relating to the same subject.

The defendant first points to trial counsel’s acquiescence in the prosecution’s use of patient progress notes made of the defendant while he was receiving treatment at Cermak Hospital during his incarceration in the Cook County jail. On direct appeal, this court determined that the notes were not so unreliable that expert witnesses could not make use of them in evaluating the defendant, and the court also noted that the defense invoked the records to help demonstrate the defendant’s lengthy history of mental illness. As the State observes, insanity was the defense at trial, and counsel acted appropriately in attempting to find within these records evidence to support the defendant’s claim of mental illness.

Also with respect to the psychiatric testimony, the defendant complains that he was not advised of his rights before speaking to two psychiatrists, and that counsel erred in failing to preserve the issue in the trial court. On direct appeal, this court concluded that the error was harmless, given the defense decision to present psychiatric evidence. 
Scott
, 148 Ill. 2d at 529-30. We continue to adhere to that decision. The defendant cannot show prejudice if the error was harmless. 
People v. Ward
, 187 Ill. 2d 249, 266 (1999).

The defendant next complains of counsel’s failure to object to testimony that the defendant had been found fit for trial. On direct review, this court concluded that any objection to the references to the defendant’s fitness had been waived, noting that counsel did not object to the testimony and, further, that much of the testimony had been elicited by the defense. 
Scott
, 148 Ill. 2d at 530-31. The court also concluded that these references to fitness were harmless. 
Scott
, 148 Ill. 2d at 531. The defendant is unable to demonstrate prejudice from these rulings. Again, if the error was harmless, the defendant cannot show prejudice from counsel’s failure to raise the point. 
Ward
, 187 Ill. 2d at 266.

The defendant raises once again a complaint regarding the use of the GBMI jury instructions at trial. The defendant now contends that trial and appellate counsel should have argued that the erroneous instructions could not be deemed harmless. We have already addressed these issues at length, both on direct review and in this appeal, and we do not believe that any further discussion is necessary.

The defendant next challenges trial counsel’s decision to invoke favorable evidence about the victim’s character. In his confession, the defendant stated that the victim used a racial slur against him. The trial evidence showed, however, that the victim, a student at the Moody Bible Institute, was quiet and polite. Defense counsel attempted to use this evidence to the defendant’s advantage by arguing that the defendant’s misperception was evidence of delusive thinking. On direct appeal, in response to the defendant’s challenge to the introduction of favorable evidence of the victim’s character, this court found that the evidence did not deprive the defendant of a fair trial because defense counsel argued that it was relevant. 
Scott
, 148 Ill. 2d at 545 (“Given the fact defendant argued the relevance of the character evidence, we find that these references did not deny defendant a fair trial”). We conclude that trial counsel’s decision to use the evidence in this way was, in essence, a matter of trial strategy, and therefore it is accorded substantial deference under the 
Strickland 
ineffectiveness standard. 
Strickland v. Washington
, 466 U.S. 668, 690-91, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066 (1984).

The defendant also contends that trial counsel erred in failing to preserve an issue regarding the testimony of one of the prosecution’s expert witnesses, Dr. James Cavanaugh. At one point in his testimony, Dr. Cavanaugh gave an incorrect definition of insanity, using the phrase “irresistibly driven” in defining the term. Defense counsel objected to this definition but did not include the issue in the post-trial motion. On direct appeal, this court considered only whether the testimony was plain error, in light of counsel’s failure to preserve the issue in the post-trial motion, and concluded that it was not. 
Scott
, 148 Ill. 2d at 547-48. The defendant complains that counsel’s inaction resulted in this court’s deciding the issue under a plain error standard rather than a more rigorous test. As this court noted on direct appeal, the instructions given to the jury at the close of testimony correctly set forth the applicable standard. We do not believe that there is a reasonable probability that our result would have been different if counsel had properly preserved an objection to the testimony.

The defendant also argues that defense counsel was ineffective for failing to object to the prosecution’s comment in closing argument at trial that the defendant had been truant while enrolled in school. On direct review, this court held that the comment was not plain error; the court employed that standard because of counsel’s failure to properly object to the comment at trial. 
Scott
, 148 Ill. 2d at 550. We do not believe that this brief and isolated remark could have denied the defendant a fair trial.

The defendant, in his brief before this court, also raises several catch-all arguments, framing them in broad terms and invoking issues he raised on earlier occasions. Thus, the defendant contends that he was denied the effective assistance of trial and appellate counsel because they “failed to raise the issues raised in Points 3 through 9 of the Petition [citation] at trial, in post-trial motions, and on appeal”; he also “reasserts all constitutional issues asserted in defendant’s direct appeal and readopts those arguments”; finally, he contends, as a general matter, that this court should apply provisions of state constitutional law in any instance in this case in which the result would be more favorable to him under the Illinois Constitution. We agree with the State that the defendant’s general references to these issues, unsupported by argument or citation to authority, are inadequate to justify their treatment here. See 177 Ill. 2d R. 341(e)(7).

*  *  *

For the reasons stated, the judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, January 16, 2001, as the date on which the sentence of death, entered in the circuit court of Cook County, is to be carried out. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119–5 (West 1998). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where the defendant is now confined.

Judgment affirmed.

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that Scott’s convictions should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998)
, the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). Scott
’s
 sentence of death should therefore be vacated and the cause should be remanded for imposition of a sentence of imprisonment. Ill. Rev. Stat. 1983, ch. 38, par. 9–1(j).