2023 IL App (1st) 191247-UC

No. 1-19-1247

Order filed January 11, 2023

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 94 CR 28535 03 |
| | ) | |
| JUAN MENESES, | ) | |
| | ) | Honorable William Raines, |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER[1] delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The trial court did not err in denying petitioner's motion for leave to file a successive postconviction petition.  Affirmed.

---

[1] Upon the retirement of Justice Gordon, the original author of this decision, Justice Debra B. Walker was assigned authorship of this case on December 5, 2022, and has had an opportunity to review the prior decisions, briefs, and record.

¶ 2    Following a jury trial, petitioner Juan Meneses was convicted of first-degree murder and two counts of attempted murder, which he committed when he was 16 years old. The trial court sentenced him to concurrent terms of 60 years' imprisonment for the first-degree murder conviction and 30 years' imprisonment for each of the attempted murder convictions. We affirmed his convictions and sentences on direct appeal. See *People v. Meneses*, 306 Ill. App. 3d 1175 (1999) (table) (unpublished order under Supreme Court Rule 23). Petitioner then filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)). The trial court summarily dismissed his initial postconviction petition, and we affirmed. See *People v. Meneses*, 375 Ill. App. 3d 1141 (2007) (table) (unpublished order under Supreme Court Rule 23).

¶ 3    Petitioner subsequently filed a motion for leave to file a successive postconviction petition, which the trial court denied. Although this court reversed and remanded for resentencing (see *People v. Meneses*, 2021 IL App (1st) 191247-U)), our supreme court denied the State's petition for leave to appeal and issued a supervisory order directing us to vacate our judgment and reconsider our decision in light of *People v. Dorsey*, 2021 IL 123010 (see *People v. Meneses*, No. 127159 (Nov. 24, 2021)). We then vacated the judgment and opinion but reversed and remanded the cause for further postconviction proceedings "under the proportionate penalties clause." *People v. Meneses*, 2021 IL App (1st) 191247-B, ¶ 3. The State again appealed. For a second time, the supreme court denied the State's petition for leave to appeal and issued a supervisory order. This order directed this court to (1) vacate our judgment in the case, (2) vacate the portion of our opinion addressing the proportionate penalties clause, and (3) "affirm the circuit court's judgment denying leave to file a successive postconviction petition." See *People v. Meneses*, No.

128305 (Sept. 28, 2021). We have done so, and we now affirm the judgment of the circuit court of Cook County.

¶ 4                                    BACKGROUND

¶ 5     Our order disposing of petitioner's direct appeal contains a detailed account of the evidence adduced at trial. See *Meneses*, 306 Ill. App. 3d 1175. Moreover, the parties raise no issues concerning those facts. We therefore summarize only the basic facts relevant to this appeal.

¶ 6     The evidence adduced at trial established that, on November 8, 1994, petitioner and two fellow members of the Latin Kings street gang confronted three members of La Raza, a rival gang, in an alley on the southwest side of Chicago. During the confrontation, petitioner shot and killed 17-year-old Hiram Martinez, one of the three La Raza members.

¶ 7     An assistant state's attorney testified that petitioner confessed to shooting Martinez and memorialized his confession in a written statement. According to petitioner's statement, he believed that members of the La Raza gang had smashed his car windshield, so he drove to pick up two other individuals, codefendants Alejandro Ruvalcaba and Juan Alvarez, and told them he planned to shoot at someone in the La Raza gang. Petitioner drove into an alley near 59th Street where he believed members of that gang congregated. Once there, petitioner and Ruvalcaba (who also had a gun) left Alvarez in the car, and they walked into the alley. Petitioner saw three people, whom he had never seen before, and identified himself in such a way that they "would think [he was] one of theirs *** like one of their own folks." Immediately thereafter, petitioner pulled out his gun and started shooting at the three unarmed individuals. Petitioner fired ten shots and Ruvalcaba fired once. Petitioner and Ruvalcaba returned to the car and fled with Alvarez to petitioner's home, where they washed the gunpowder from their hands. One of the victims and another witness identified petitioner as the shooter in a lineup.

¶ 8     Petitioner testified that the assistant state's attorney told him what to say in his written statement. Petitioner stated that he only wanted to speak to La Raza gang members, and when he observed one of the three La Raza members pull a handgun from his waist, petitioner pulled out his weapon and started firing while backing up because he was afraid.

¶ 9     In rebuttal, a Chicago police detective testified that petitioner never stated that another person brandished a gun or that petitioner fired the gun out of fear. In addition, the assistant state's attorney testified that (1) she did not tell petitioner what to say in his court-reported statement, (2) petitioner never said that he went to the alley solely to talk to the La Raza street gang members, and (3) petitioner never said that he saw anyone reach for a gun or that he turned and began running while firing his gun.

¶ 10     Following deliberations, the jury found petitioner guilty of Martinez's murder and the attempted murder of the other two La Raza members. At sentencing, the trial court stated that it considered petitioner's age, family background, and prior criminal history, including a prior armed robbery. The court then imposed concurrent sentences of 60 years' imprisonment for the murder and 30 years' imprisonment for the attempted murders.

¶ 11     As noted above, we affirmed both petitioner's direct appeal (see *Meneses*, 306 Ill. App. 3d 1175 (1999) (table) (unpublished order under Supreme Court Rule 23) and the summary dismissal of his initial postconviction petition (see *Meneses*, 375 Ill. App. 3d 1141 (2007) (table) (unpublished order under Supreme Court Rule 23).

¶ 12     On December 20, 2018, petitioner filed a *pro se* "motion for sentence reconsideration under revestment doctrine." Petitioner's motion requested that the trial court reconsider his sentence in light of *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. Reyes*, 2016 IL 119271. Although the report of proceedings from May 2, 2019, indicates that the trial court continued the matter to

4

locate the court file and for further "research," the parties note that there is no further report of proceedings after that date. Instead, the record indicates that the court construed petitioner's filing as a motion for leave to file a successive postconviction petition and denied petitioner's motion on the same day: May 2, 2019.[2]

¶ 13    Petitioner appealed that denial, and in a prior unpublished order, this court granted him a new sentencing hearing under the eighth amendment. See *People v. Meneses*, 2021 IL App (1st) 191247-U. On November 24, 2021, the supreme court denied the State's petition for leave to appeal but issued a supervisory order directing us to vacate our judgment and consider the effect of the court's opinion in *People v. Dorsey*, 2021 IL 123010, to determine whether (1) "[petitioner's] sentence constitutes a *de facto* life sentence" and (2) a different result was warranted. See *People v. Meneses*, No. 127159 (Nov. 24, 2021). In response, this court vacated our judgment and opinion but held that "we must, instead, reverse and remand for further postconviction proceedings under the proportionate penalties clause." *Meneses*, 2021 IL App (1st) 191247-B, ¶ 3.

¶ 14    The State again appealed. The supreme court subsequently denied the State's petition for leave to appeal and for a second time issued a supervisory order. This order directed this court to (1) vacate our judgment in the case, (2) vacate the portion of our opinion addressing the proportionate penalties clause, and (3) "affirm the circuit court's judgment denying leave to file a successive postconviction petition." See *People v. Meneses*, No. 128305 (Sept. 28, 2022). In accordance with the supreme court's most recent supervisory order, we have vacated the judgment and the relevant portions of this court's opinion in *Meneses*, 2021 IL App (1st) 191247-B.

¶ 15                                    ANALYSIS

---

[2] The parties do not raise an issue regarding the trial court's characterization.

¶ 16 In this case, petitioner contends that the trial court erred in denying his motion for leave to file a successive postconviction petition. As a preliminary matter, we note that, although petitioner argues in his brief that his sentence was "disproportionate," he nonetheless begins his brief stating that he "raises a constitutional challenge to his sentence under *Miller v. Alabama*, 567 U.S. 460 (2012)," which focused on challenges brought pursuant to the eighth amendment to the United States Constitution. *Miller* did not discuss the proportionate penalties clause of the Illinois constitution. Moreover, petitioner makes no contention of error regarding—nor provides any citation to—the proportionate penalties clause of our state constitution.

¶ 17 The Act allows a petitioner to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are *res judicata*, and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. *Id.* at 274; 725 ILCS 5/122-3 (West 2020).

¶ 18 Moreover, the Act provides that only one petition may be filed by a petitioner without leave of court. 725 ILCS 5/122-1(f) (West 2020). As a result, successive postconviction petitions are "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39. The granting of leave to file a successive petition is governed by the cause-and-prejudice test, where cause is defined as some objective factor external to the defense that impeded efforts to raise the claim in an earlier

proceeding, and prejudice occurs where the alleged error "so infected" the trial that the resulting conviction or sentence violates due process. *Id.* ¶ 14 (quoting 725 ILCS 5/122-1(f) (West 2014)).

¶ 19    Both elements of the cause-and-prejudice test must be met for the petitioner to prevail. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002).  The cause-and-prejudice test is a "more exacting standard" than the " 'gist' standard" under which initial postconviction petitions are reviewed.  *People v. Conick*, 232 Ill. 2d 132, 142 (2008).  We review *de novo* the circuit court's denial of leave to file a successive petition. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 20    The eighth amendment, applicable to the states through the fourteenth amendment, (*Robinson v. California*, 370 U.S. 660 (1962)), prohibits, *inter alia*, the imposition of "cruel and unusual punishments" (U.S. Const., amends. VIII, XIV), which include those that are "disproportionate" to the offense (*Graham v. Florida*, 560 U.S. 48, 59 (2010)).  With respect to juveniles, the United States Supreme Court has held that the eighth amendment prohibits (1) capital sentences for juveniles who commit murder (*Roper v. Simmons*, 543 U.S. 551, 578-79 (2005)), (2) mandatory life sentences for juveniles who commit nonhomicide offenses (*Graham v. Florida*, 560 U.S. 48, 82 (2010)), and (3) mandatory life sentences for juveniles who commit murder (*Miller v. Alabama*, 567 U.S. 460, 489 (2012)).  Our supreme court further held that sentencing a juvenile to a mandatory term of years that is the functional equivalent of life without the possibility of parole (*i.e.*, a *de facto* life sentence) violates the eighth amendment.  *People v. Reyes*, 2016 IL 119271, ¶ 9.  Finally, in *People v. Buffer*, 2019 IL 122327, the court held that a sentence that exceeds 40 years is a *de facto* life sentence (*Id.* ¶ 41-42) and that this holding applies retroactively and is cognizable in a petitioner's postconviction proceeding (*Id.* ¶ 46).

¶ 21    In this case, petitioner contends, and the State agrees, that he has shown cause for his failure to raise this claim earlier.  With respect to prejudice, petitioner argues that his 60-year sentence,

which was imposed for an offense he committed when he was 16, is an unconstitutional *de facto* life sentence notwithstanding the fact that he is entitled to day-for-day sentencing credit.

¶ 22    Subsequent to the filing of petitioner's reply brief, however, our supreme court issued its decision in *Dorsey*, 2021 IL 123010.  In *Dorsey*, the court recounted its prior holding that a sentence imposed on a juvenile offender that exceeds 40 years constitutes a *de facto* life sentence. *Id.* ¶¶ 46-47 (citing *Buffer*, 2019 IL 122327, ¶ 41).  The court, however, noted that, although the defendant was sentenced to an aggregate 76-year term of imprisonment, he was nonetheless eligible for day-for-day good-conduct credit at the time of his sentencing and would therefore have an opportunity for release after 38 years.  *Id.* ¶¶ 19, 65.  The court then held that, since defendant's opportunity for release would take place within 40 years, it was not a *de facto* life sentence in violation of the eighth amendment.  *Id.* ¶ 65.  The court thus concluded that "the appellate court correctly determined that defendant could not satisfy the prejudice prong of the cause-and-prejudice test for bringing a successive postconviction petition with respect to his eighth amendment claim."  *Id.*

¶ 23    The facts of this case are virtually indistinguishable from those of *Dorsey*.  Here, too, petitioner was sentenced to an aggregate 60-year sentence for an offense committed when he was a juvenile, but his sentences are eligible for day-for-day good-conduct credit.  See 730 ILCS 5/3-6-3(a)(2) (1996).  Consequently, he will only need to serve one-half, or 30 years, of his 60-year sentence.  Petitioner is therefore eligible for release after 30 years, which is less than the 40-year "floor" established by *Buffer* as a *de facto* life sentence.  As a result, petitioner cannot meet the prejudice prong of the cause-and-prejudice test.  *Dorsey*, 2021 IL 123010, ¶ 65.  Since petitioner cannot show both cause and prejudice, he cannot prevail.  See *Pitsonbarger*, 205 Ill. 2d

at 464.  Therefore, the trial court did not err in denying his motion for leave to file a successive postconviction petition.

¶ 24                                   CONCLUSION

¶ 25    We affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.